Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is entered into as of the Execution Date (as defined herein) by and between Plaintiffs Edward L. Cheatham, Larry Gist, and James Teeples ("Plaintiffs") and the Class (as defined herein) whom they have been certified to represent, on the one hand, and Defendants R.C.A. Rubber Company ("R.C.A."), Pulaski Rubber Company ("Pulaski") and Pulaski Rubber Company Benefit Plan ("Plan") (collectively "Defendants"), on the other hand.

### I. Recitals

WHEREAS, this class action lawsuit was filed on January 27, 2011 in the United States District Court of the Middle District of Tennessee (Columbia) as Civil Action No. 1:11-cv-00006) (the "Action"), seeking certain healthcare benefits for certain Pulaski retirees and their dependents arising from the November 1, 2010 termination of their healthcare benefits;

WHEREAS, on June 9, 2011, the United States District Court for the Middle District of Tennessee (the "Court") entered an Order in the Action granting Plaintiffs' Unopposed Motion to Certify a Class which the Parties agree should be defined as set forth in Section 2.2 *infra*;

WHEREAS, by Order dated May 16, 2012, the Court granted Plaintiffs' Motion for Summary Judgment regarding Plaintiffs' entitlement to receive retiree healthcare benefits from Pulaski and the Plan, but denied Plaintiffs' Motion for Summary Judgment requesting to hold R.C.A. liable for those healthcare benefits;

WHEREAS, by Order dated July 22, 2013, following a bench trial held on February 13, 2013, the Court held that Defendant R.C.A. was liable for Pulaski's and the Plan's liability for the healthcare benefits due the Class from Pulaski and the Plan;

WHEREAS, on January 18, 2014, Plaintiffs filed a Suggestion of Death as to William Holt, a named plaintiff in the Action;

WHEREAS, Plaintiffs, on behalf of themselves and the Class, and Class Counsel, and Defendants, by their counsel, engaged in a mediation through Jerome F. Weiss, Esq. of Mediation, Inc. (the "Mediator") to attempt to settle this Action;

WHEREAS, Plaintiffs, on behalf of themselves and the Class, and Class Counsel, and Defendants, with the assistance of the Mediator, entered into a certain Memorandum of Agreement (the "MOA"), a copy of which is attached hereto as Exhibit 1;

WHEREAS, Defendants took the position that the MOA was void on the ground that timelines contained therein were not satisfied by Plaintiffs;

WHEREAS, Plaintiffs, on behalf of themselves and the Class, and Class Counsel, disputed Defendants' position and after moving to enforce the MOA, the Court ordered the parties to return to the mediator to resolve any outstanding issues regarding the MOA.

WHEREAS, the Mediator has provided the parties with a Binding Determination of the issues outstanding, a copy of which is attached as Exhibit 2;

WHEREAS, the Plaintiffs and Defendants have now agreed to modify the terms of the MOA in which certain terms contained in the MOA and the Binding Determination will be voided if Defendants timely and fully make certain payments under an alternative schedule;

WHEREAS, Plaintiffs and Class Counsel (as defined herein) have concluded, under the circumstances and considering the pertinent facts and applicable law, that it is in the best interests of Plaintiffs and the Class to enter into this Settlement Agreement to avoid the uncertainties of further litigation, including litigation of the enforceability of settlements, to avoid the likelihood of appeal of any further order or judgment issued by the Court in the Action, to address the weak financial condition of the Defendants, and in light of the possibility that no benefits might otherwise be provided to members of the Class through further litigation of this Action; and,

WHEREAS, R.C.A. has suffered significant financial drawbacks and is responsible for mandatory minimum contributions to its pension plan of which certain members of the Class may be a participant for which it does not have the wherewithal to make that may trigger action by the Pension Benefit Guaranty Corporation (the "PBGC"), that might interfere with continued performance of this Settlement Agreement by Defendants;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Settlement Agreement, as well as the good and valuable consideration provided for herein, the Plaintiffs and the Defendants hereby agree to settlement of the Action on the following terms and conditions.

## II. Definitions

For purposes of this Settlement Agreement, the following terms, when used in capitalized form, will have the meanings indicated *infra*. In addition, where appropriate, the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be. Except as otherwise provided herein, the helping verb "will" is used in the sense of "shall" as required or mandatory action rather than as action that merely is anticipated to occur in the future. Terms may also be defined in this Settlement Agreement where a capitalized term enclosed in parentheses and quotation marks immediately follows its definition. Such definitions and terms are effective as if set forth in this Section II.

**2.1.** "Action" means the class action filed as Civil Action No. 1:11-cv-00006, which is pending in the United States District Court of the Middle District of Tennessee (Columbia).

**2.2** "Class" means the former employees of Defendant Pulaski Rubber Company ("Pulaski") who both were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, or predecessor unions (collectively the "Union") in collective bargaining and retired

2

from Pulaski having met the requirements for retiree health care benefits specified in the collectively bargained agreement in place at the time of the former employee's retirement, as well as their eligible dependents, spouses and surviving spouses who met (and who as of October 31, 2010, were continuing to meet) the eligibility requirements for such benefits, and whose retiree health care benefits were terminated effective November 1, 2010, subject to COBRA continuation..

    **2.3** "Class Counsel" means William T. Payne, Esquire and Stephen Pincus, Esquire, of Feinstein Doyle Payne & Kravec, LLC, 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, Pennsylvania 15219, (412) 281-8400.

    **2.4.** "Class Member" means a member of the Class.

    **2.5.** "Class Member Settlement Payment" means the distributions to Class Members and Class Member Successors from the Class Settlement Amount pursuant to the terms set forth in Section 4.4 *infra*.

    **2.6.** "Class Member Successor" means the estate for a deceased Class Member or, where applicable, heirs of deceased Class Members.

    **2.7.** "Class Notice" means the Court-approved notice mailed to all Class Members informing them of this Settlement Agreement, substantially in the form attached as Exhibit 3.

    **2.8.** "Class Settlement Amount" means an amount of at least $100,000, but no more than $280,000, payable by Defendants in installment stages as set forth in Sections 3.2, and 4.1 and 4.2, plus the proceeds of the Parr Note, including the net proceeds from the sale or paying off of the Parr Note, if any.

    **2.9.** "Complaint" means the complaint filed in the Action.

    **2.10.** "Court" means the United States District Court for the Middle District of Tennessee (Columbia).

    **2.11.** "Defendants" means R.C.A., Pulaski and the Plan, collectively.

    **2.12** "Distribution Date" refers to the date that each distribution of the Class Settlement Amount is to be paid to Class Members under the terms of this Settlement Agreement.

    **2.13.** "Effective Date" means the first date after which all of the following events and conditions have been satisfied or have occurred:

    (a)    Plaintiffs, Class Counsel, and Defendants have executed this Settlement Agreement;

3

(b)　The Court has entered a Preliminary Approval Order, substantially in the form of Exhibit 4, and a Final Order and Judgment approving this Settlement Agreement, substantially in the form of Exhibit 5; and

(c)　Five business days have passed after the Final Approval.

**2.14.**　"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

**2.15.**　"Escrow Agent" means PenChecks Trust Company of America whose website is www.penchecks.com.

**2.16.**　"Execution Date" means October 31, 2014, *i.e.*, the date as of which this Settlement Agreement has been executed by Plaintiffs, Class Counsel, and Defendants.

**2.17.**　"Fairness Hearing" means the hearing at which the Court will consider whether to give final approval to the Settlement, enter a Final Order and Judgment, and make such other final rulings as are contemplated by this Settlement Agreement.

**2.18.**　"Final Approval" is the last event of the following to occur following the entry of the Final Order and Judgment:

(a)　The time to appeal from the Final Order and Judgment has expired and no notice of appeal has been filed;

(b)　In the event of an appeal, any appeal from the Final Order and Judgment has been finally dismissed;

(c)　The time to petition for review with respect to any appellate decision affirming the Final Order and Judgment has expired; and,

(d)　If a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in the affirmance of the Final Order and Judgment substantially in the form of the Final Order and Judgment entered by the Court.

**2.19.**　"Final Order and Judgment" means the final order and judgment by which the Court, at or after the Fairness Hearing, approves this Settlement Agreement, dismisses the claims of Plaintiffs and the Class with prejudice, enters a final judgment in accordance with this Settlement Agreement, and makes such other final rulings as are contemplated by this Settlement Agreement, substantially in the form of the document attached as Exhibit 5 to this Settlement Agreement.

**2.20**　"Mediator" means Jerry F. Weiss, Esq. of Mediation, Inc.

4

**2.21**    "Medica Report" is the November 26, 2013 forensic examination report of R.C.A. Rubber conducted by Medica, LLC.

**2.22**    "Memorandum of Agreement" or "MOA" means the Memorandum of Agreement dated January 8, 2014 (attached hereto as Exhibit 1), as modified by the Mediators' Binding Determination (attached hereto as Exhibit 2).

**2.23**    "Parr Note" means that note, dated December 2009, a copy of which is attached hereto as Exhibit 6, requiring payments from Parr Industries, Inc. to Pulaski.

**2.24**    "Parties" means the Plaintiffs, the Class, and Defendants, collectively.

**2.25.**    "Plaintiffs" means Edward L. Cheatham, Larry Gist, and James Teeples, collectively.

**2.26.**    "Plan" means the Pulaski Rubber Company Benefit Plan, as amended from time to time.

**2.27.**    "Preliminary Approval Order" means an order of the Court preliminarily approving this Settlement Agreement and substantially in the form of Exhibit 4, and giving notice to the Class of the prior certification of this Action as a class action, the appointment of Class Counsel, the entry by the Parties into the Settlement Agreement, the Court's approval of Class Notice, and their right to object to the certification of the Class and the Settlement, the notice of which shall be in substantially in the form attached as Exhibit 3.

**2.28.**    "Pulaski" means Pulaski Rubber Company.

**2.29.**    "R.C.A." means R.C.A. Rubber Company.

**2.30.**    "Released Claims" means any and all claims, demands, allegations, and damages (including actual, compensatory, punitive, exemplary, and nominal damages, fines and penalties), whether known or unknown, contingent or non-contingent, or foreseen or unforeseen, and whether arising under statute, regulation, ordinance, common law, equity, or otherwise, asserted or alleged in the Complaint or arising, in whole or in part, out of the facts, occurrences, or transactions described in the Complaint.

**2.31.** "Released Parties" means Defendants, together with their current, former and future affiliates, insurers, shareholders, fiduciaries, officers, employees, directors, predecessors, successors, actuaries, agents, attorneys, and other affiliated parties or entities and Plaintiffs.

**2.32.** "Releasors" means collectively, Plaintiffs, each Class Member, Class Member Successors and the Class.

**2.33.**    "Settlement" means the settlement of claims between and among the Parties based on the terms of the Settlement Agreement.

**2.34.** "Settlement Administrator" means Nichoas L. Saakvitne, Saakvitne Law Group, 552 Colorado Avenue, 2nd Floor, Santa Monica, CA 90401, whose website is www.erisafiduciary.com, or his duly appointed successor, as approved by the Court.

**2.35.** "Settlement Agreement" means this Settlement Agreement and Release.

**2.36.** "Settlement Fund" means the Class Settlement Amount payments made by the Defendants to the Escrow Agent and administered by the Settlement Administrator for the benefit of the Class Members and Class Member Successors.

## III. Procedures

**3.1.    Preliminary Approval.** As soon as practicable after the Execution Date, the Parties will submit this Settlement Agreement to the Court, together with a motion asking the Court to enter a Preliminary Approval Order, substantially in the form attached hereto as Exhibit 4, to set a date and time for a Fairness Hearing, and to approve the mailing of the Class Notice to Class Members and Class Member Successors, substantially in the form attached hereto as Exhibit 3. The Parties agree to undertake their best efforts to effectuate the terms and purposes of this Settlement Agreement, to secure the Court's approval, and to oppose any appeals from or challenges to the Final Order and Judgment, substantially in the form attached hereto as Exhibit 5, approving the Settlement and this Settlement Agreement.

**3.2.    Treatment of the Parr Note and Its Proceeds.**

(a)    As of the Execution Date, Defendants will hold the Parr Note for the benefit of Plaintiffs and the Class, subject to release if this Settlement Agreement does not become effective under Section 3.8.

(b)    For all payments of principal and interest on the Parr Note due on or after the Execution Date, whether received by Defendants before or after the Execution Date, Defendants will forward those payments to the Escrow Agent to deposit in the Settlement Fund established and administered by the Settlement Administrator, within ten (10) business days of receipt for holding in escrow through the Effective Date.

(c)    On and after the Effective Date, the Settlement Administrator, subject to approval of Class Counsel, shall have the discretion to monetize the Parr Note by sale, refinancing or otherwise, and distribute the proceeds to the Class Members after the Effective Date.  The Parties understand that because the Note is non-recourse and there are potential environmental issues on the former Pulaski site, and as such, it is likely that the Settlement Administrator will need to offer a discount of at least 20% in order to monetize the Parr Note.

6

(d)     Pulaski shall assign the Parr Note to the Settlement Administrator within 45 days after the Effective Date.

(e)     If there is no Final Approval, the Settlement Administrator will direct the Escrow Agent to return to Defendants the proceeds received as payments of principal and interest on the Parr Note, subject to payment to the Settlement Administrator and Escrow Agent of reasonable fees and expenses.

**3.3.    Class Notification.** After entry of a Preliminary Approval Order, the Settlement Administrator will send to each known Class Member and Class Member Successor, whom the Parties can identify, a copy of the Class Notice, substantially in the form attached hereto as Exhibit 3, notifying members of the Parties' execution of the Settlement Agreement, the date and time for the Fairness Hearing, and of their right to object to the terms of this Settlement Agreement; the appointment of Class Counsel; and the certification of this Action as a class action. As part of the Class Notice, the Settlement Administrator will send a form(s) to each Class Member (and any known Class Member Successors) requesting updated contact information, and if applicable, the Class Member's date of death and estate information.   The Class Notice will be sent by first class mail to the last known address of each known Class Member as it appears in Defendants' records. The Settlement Administrator shall use  his best efforts to complete the mailing of the notice to Class members within fifteen (15) days of the Preliminary Approval Order. The Settlement Administrator will use reasonable efforts to locate new addresses for any returned notices, and shall keep Class Counsel informed of such efforts.

**3.4.    Objections to Settlement.** The Class Notice, substantially in the form attached hereto as Exhibit 3, provides the procedures by which Class Members and Class Member Successors can object in the Action to the Settlement, the Settlement Agreement and the Parties' joint motion for the Court to issue the Preliminary Approval Order.

**3.5.    Entry of Judgment.** At the Fairness Hearing, the Parties will request jointly that the Court enter a Final Order and Judgment, substantially in the form attached hereto as Exhibit 5.

**3.6.    Voidability of the Settlement Agreement If Altered.** If the Court or any appellate court enters an order altering the Settlement and this Settlement Agreement in any way that (i) imposes material obligations on one or both Defendants that exceed the obligations imposed on Defendants by the written terms of this Settlement Agreement, (ii) restricts or reduces the scope or enforceability of the Release set forth in Section V of this Settlement Agreement, or (iii) fails to dismiss all of the claims of Plaintiffs and the Class with prejudice, Defendants may void this Settlement Agreement within five (5) business days from the date they receive notice of the Court's or of an appellate court's entry of such an order by giving written notice of intent to void the Settlement Agreement to Class Counsel. In the event that the Court or any appellate court materially reduces the benefits to Plaintiffs or the Class, Plaintiffs may void the Settlement Agreement by serving written notice to Defendants within thirty (30) days of the

7

order evidencing such reduction. The effect of such a notice shall be the same as the effect of a denial of Final Approval as described in Section 3.7 *infra*.

**3.7.** **Effect of Failure to Grant Final Approval.** If the Court fails to enter the Final Order and Judgment, substantially in the form of Exhibit 5, or if there is an appeal and the Final Order and Judgment is set aside, or if the Settlement Agreement does not become effective for any other reason, then this Settlement Agreement shall be null and void *ab initio*, shall have no force or effect, and shall impose no obligations on the Parties, except that the Parties (i) will be prohibited from using this Settlement Agreement or the Parties' settlement discussions or negotiations as evidence in the Action and (ii) agree to cooperate in asking the Court to set a schedule for the resumption of the Action. The intent of the previous sentence is that, in the event Final Approval is denied by the Court or on appeal, or the Settlement Agreement does not become effective for any other reason, the Parties will revert to their positions immediately before the execution of the Settlement Agreement and the Action will resume without prejudice to any Party. In the event that the Settlement Agreement is not approved, the Parties reserve all rights, claims, defenses, and appeals that they may have, including but not limited to their rights, claims, defenses and appeals with respect to whether a Class should be certified and the membership of the Class.

**3.8.** **The Settlement Administrator and Escrow Agent.** As part of the joint motion for entry of the Final Order and Judgment, the Parties will jointly move for the Court to approve the appointment of the Settlement Administrator for the purpose of assignment of the Parr Note to the Settlement, to monitor cash payments made by the Defendants as set forth in Section 4.1 and 4.2 *infra*, and to approve distributions to the Class Members and Class Member Successors, as set forth in Section 4.4 *infra*. As part of the joint motion for entry of the Final Order and Judgment, the Parties will also jointly move for approval of the Escrow Agent to receive payments from the Defendants or the holder of the Parr Note, and to make distributions as directed by the Settlement Administrator.

**3.9.** **Costs of Class Notice.** The reasonable costs and expenses of providing Class Notice to Class Members shall initially be borne by the Settlement Administrator, who will be reimbursed from the Settlement Fund, pursuant to Section 4.3, *infra*.

### IV. Settlement Benefits and Payments

**4.1.** **Settlement Payments Subject to Being Voided under Section 4.2.** In exchange for the Releases set forth in Section V, and in addition to the treatment of the Parr Note in Section 3.2 *supra*, and subject to all of the terms of this Settlement Agreement, Defendants agree to make the following payments into a Settlement Fund held by the Escrow Agent for the benefit of the Class:

      a. The interest paid on the Parr Note to the Defendants from January 30, 2014 through October 31, 2014, no later than 45 days after final approval;

      b. $70,000 no later than 45 days after final approval;

8

c. $70,000 no later than 90 days after final approval, or in 12 monthly installments beginning 45 days after final approval on the condition that said installments will add reasonable interest for the unpaid balance;

d. $70,000.00 by January 30, 2016, unless by November 1, 2015 the Defendants do not agree to make such payment in writing to the Mediator and Plaintiffs' Counsel. If Defendants do not agree to make such payment, then a forensic examination will be conducted under the direction of the Mediator will determine the ability, financial status and viability of R.C.A. to make such payment, utilizing factors including but not limited to those contained in the Medica Report with respect to R.C.A.'s ability to pay. If the Mediator determines that Defendants can pay the additional $70,000.00 (or whatever lesser amount if they cannot pay the $70,000.00) then Defendants shall pay said amount in accordance with the determination made per the standards referred to in this subsection; and

e. $70,000.00 by January 30, 2017, unless by November 1, 2016 the Defendants do not agree to make such payment in writing to the Mediator and Plaintiffs' Counsel. If Defendants do not agree to make such payment, then a forensic examination will be conducted under the direction of the Mediator will determine the ability, financial status and viability of R.C.A. to make such payment, utilizing factors including but not limited to those contained in the Medica Report with respect to R.C.A.'s ability to pay. If the Mediator determines that Defendants can pay the additional $70,000.00 (or whatever lesser amount if they cannot pay the $70,000.00) then Defendants shall pay said amount in accordance with the determination made per the standards referred to in this subsection.

f. If there is any disagreement with respect payments set forth in Section 4.1.d and 4.1.e that the Parties cannot resolve by themselves, the Parties will agree to submit the issue to the Mediator. If the Parties cannot then reach agreement, the Mediator will have the authority to make a binding determination.

**4.2 Alternative Settlement Payments.** The payments provided for in Section 4.1 will be stayed and ultimately voided if, in addition to complying with the treatment of the Parr Note in Section 3.2 and not appealing any rulings or orders to the Sixth Circuit Court of Appeals, Defendants pay to the Escrow Agent (or to Defendants' counsel's firm's trust account prior to the issuance of the Preliminary Approval Order) within ten (10) business days of November 1, 2014 and within ten (10) business days of the first day of the following nineteen months the sum of $5,000 (US). If there is no Final Approval, the Settlement Administrator will direct the Escrow Agent to return to Defendants the monthly payments of $5,000, subject to payment to the Settlement Administrator and Escrow Agent of reasonable fees and expenses.

**4.3. Payment of the Settlement Administrator's and Escrow Agent's Fees and Expenses from the Settlement Fund.** Subject to approval by the Court in the Final Order and Judgment, the Settlement Administrator and Escrow Agent are entitled to receive from the Settlement Fund their expenses approved by the Court according to the schedule from the Trustee and Escrow Agent attached hereto as Exhibits 7 and 8, respectively.

9

**4.4. Settlement Payments to Class Members and Class Member Successors.** The Settlement Administrator shall make distributions as follows:

(a)    Within ninety (90) days of the Effective Date, the Settlement Administrator shall distribute to Class Members and Class Member Successors payments calculated using a ratio (1) the denominator of which is the total of the number of months during which the Class Members were alive from November 1, 2010 through the Effective Date (including in the calculation the months that any Class Member received benefits under COBRA from the Plan on and after November 1, 2010), and (2) the numerator of which is the total number of months during which the individual Class Member was alive from November 1, 2010 to the Effective Date, the sums held by the Settlement Administrator from the liquidation of the Parr Note and the Parr Note proceeds, as set forth in Section 3.2 *supra*, the settlement payments, as set forth in Section 4.1 *supra*, and any payments by the Defendants under the MOA in the event of a default by Defendants in their payment obligations under the Settlement Agreement, as set forth in Section 4.2 *supra*, net of the Settlement Administrator's and Escrow Agent's fees and expenses and any reasonable sums reserved by the Settlement Administrator for liquidity purposes that is no more than 5% of the balance of the Settlement Fund at the time of the calculation.

(b)    Within forty-five (45) days of each annual anniversary of the initial distribution by the Settlement Administrator to Class Members and Class Member Successors, distribution will be made only to Class Members and Class Member Successors using the formula in 4.4(a) the sums in the Settlement Fund from the liquidation of the Parr Note and the Parr Note proceeds, as set forth in Section 3.2 *supra*, the settlement payments, as set forth in Section 4.1 or 4.2 *supra*, net of the Settlement Administrator's and Escrow Agent's fees and expenses and any reasonable sums reserved by the Settlement Administrator for liquidity purposes that is no more than 5% of the balance of the Settlement Fund at the time of the calculation.

(c)    The Settlement Administrator has the authority to direct the Escrow Agent to make additional distributions from the Settlement Fund in conjunction with the liquidation of the Parr Industries Note, after the final of the 20 monthly payments are made pursuant to Section 4.2 or after the last payment on the Parr Industries Note is made, and is not required to wait until the next annual distribution.

(d)    If prior to the final payment set forth in Section 4.4(b) and (c), the Settlement Administrator cannot ascertain the whereabouts of any Class Member, after a reasonable search, such lost Class Member's settlement payment amounts shall be allocated and distributed to the remaining Class Members in accordance with the calculation detailed in Section 4.4(a).

10

(e)     The Settlement Administrator will determine the formula set forth in 4.4(a) using available census data from the Defendants., information obtained from the Class Member or Class Member Successor, the Social Security Death Index and other reliable sources of information

**4.5.    Withholding for Income Tax.**  Each Class Member Settlement Payment shall be subject to withholding for income tax to the extent that such withholding for income tax is required by law.

**4.6.    Payees for Class Member Benefits.**  In the event that a Class Member is deceased, the Settlement Administrator shall make the distribution, determined according to Section 4.4 *supra*, to the Class Member Successor.

## V. Release

**5.1.    Release.**  As of the Effective Date, Releasors forever release and discharge each and all of the Released Parties from the Released Claims.

**5.2.    Covenant Not to Sue.**  Releasors are, without limitation, precluded and estopped from bringing in the future any claim or cause of action released in the preceding paragraph. This covenant not to sue may be raised as a complete defense to, and will preclude and bar, any action or proceeding advancing any of the Released Claims or any other claim that is encompassed by this Settlement Agreement.  Moreover, as of the Effective Date, Defendants forever release and discharge and shall forever be enjoined from prosecution of the Named Plaintiffs, Class Members and Class Counsel from any and all actual or potential claims, including attorneys' fees and costs, that could have been or could be brought by Defendants arising out of any way to the facts of the Complaint or the prosecution of the Complaint.

**5.3.    Waiver of Limitations on Releases.**  Releasors expressly acknowledge certain principles of law applicable in some states, such as Section 1542 of the Civil Code of the State of California, which provide that a general release does not extend to claims that a creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement. Releasors hereby agree that the provisions of Section 1542 and all similar federal and state laws, rights, rules and legal principles of any other jurisdiction, to the extent applicable, are hereby knowingly and voluntarily waived and relinquished by Releasors.

**5.4.    Effect of Release and Covenant Not to Sue.**  The Release applies in addition to and not in lieu of any preclusive effect attaching to the dismissal of the Complaint with prejudice contemplated by this Settlement.

**5.5.    Materiality.**  The provisions of this Release constitute an essential and material term of this Settlement Agreement to be included in and approved by the Final Order and Judgment entered by the Court.

11

## VI. General & Miscellaneous Terms

**6.1.**  **No Admission of Liability.**  This Settlement Agreement is a compromise that the Parties have entered into for the purpose of settling a dispute and avoiding further litigation. The Settlement Agreement is not, and should in no way be construed as, an admission of liability or wrongdoing of any kind by any Defendant, and is not evidence of a lack of conviction in any Party's claims, denials, or defenses in the Action.

**6.2.**  **Modifications.**  Subject to Court approval, the Parties may jointly agree by written amendment to modify the provisions of this Settlement Agreement as they jointly deem necessary to effectuate the intent of this Settlement Agreement.

**6.3.**  **Binding Effect of the Settlement Agreement.**  The terms and provisions of this Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and each of their respective predecessors, privies, insurers, officers, directors, trustees, attorneys, successors, heirs, and assigns.

**6.4.**  **Multiple Originals/Counterparts.**  This Settlement Agreement, including its Exhibits, may be executed in one or more counterpart originals, each of which when so executed shall be deemed to be an original and shall be binding upon receipt by Class Counsel and Defendants' counsel of an e-mail, facsimile, or hard copy of the Settlement Agreement signed by each Party, and all of which taken together shall constitute but one instrument.

**6.5.**  **Authority of Persons Signing Agreement.**  The individuals executing this Settlement Agreement for the Parties represent and warrant that they do so with full authority to bind each such Party to the terms and provisions in this Settlement Agreement.

**6.6.**  **Entire Agreement.**  This Settlement Agreement is the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of this Agreement has been made or relied on except to the extent expressly set forth in this Agreement.

**6.7.**  **Commitment to Further Support and Further Assurances.**  Plaintiffs, Class Counsel, and Defendants agree to recommend approval of and support this Settlement Agreement to the Court and to the Class Members and to undertake their best efforts, including all reasonable steps and efforts contemplated by this Settlement Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement. Each Party shall take any and all actions, and execute, have acknowledged, and deliver any and all further documents that one or more other Parties may reasonably request to effectuate the intent and purpose of this Settlement Agreement.

**6.8.**  **Costs.**  The Parties each agree to pay their own costs of this Settlement and the Litigation. All fees, costs and expenses borne by the Settlement Administrator for the mailing

12

of Class Notice to the Class Members and Class Member Successors, and locating missing Class Members and Class Member Successors, may be deducted from Settlement Fund.

**6.9. Section Titles.** The headings in this Settlement Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Settlement Agreement or the intent of its provisions.

**6.10. No Presumption Against Drafter.** None of the Parties shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

**6.11. Confidentiality.** The addresses, social security numbers, and other personal data concerning the Class Members shall remain confidential (except as to the individual Class Member to which the personal information identifies, Class Counsel, the Settlement Administrator, the Escrow Agent, Defendants, and Defendants' counsel) and shall be sealed and not released outside the Court, except as ordered by the Court. The Parties shall not disparage, demean, or criticize the Settlement Agreement, any of the Parties, or any representative, attorney, or agent of the Parties with respect to the Settlement, the Action, or the subject matter of the Action.

**6.12. Waivers.** The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous to this Settlement Agreement.

**6.13. Extensions of Time.** The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement.

**6.14. Deadlines Falling on Weekends or Holidays.** To the extent any deadline set forth in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

**6.15. Notices.** Whenever this Settlement Agreement requires or contemplates that one Party shall give notice to another, notice shall be provided by email and by next-day express delivery as follows:

**a) If to Plaintiffs and/or the Class Members:**

> William T. Payne, Esq.
> Feinstein Doyle Payne & Kravec, LLC
> 429 Forbes Avenue
> Allegheny Building, 17th Floor
> Pittsburgh, Pennsylvania 15219
> wpayne@fdpklaw.com

**b) If to Defendants:**

13

Jack F. Fuchs, Esq.
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Jack.Fuchs@ThompsonHine.com

**6.16. Tax Consequences.** No opinion concerning the tax consequences of the Settlement to individual Class Members is being given or will be given by any Defendant, counsel to any Defendant, or Class Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending upon the particular circumstances of each individual Class Member.

**6.17. Agreement Governs Over Notice.** To the extent there is any inconsistency between this Settlement Agreement and any notice, this Settlement Agreement shall govern and operate to define the rights and obligations of the Parties.

**6.18. Court's Continuing Jurisdiction.** Without altering the finality of any of the Court's orders and judgments, the Court shall retain exclusive jurisdiction over Plaintiffs, Defendants, Class Members, and the Action with respect to matters arising out of or connected with the Settlement Agreement, and may issue such orders as may be necessary to implement the terms of the Settlement Agreement.

14

Date: October 30, 2014

_Edward Cheatham_
Edward L. Cheatham

_____
Larry Gist

_____
James Teeples

15

Date: October 30, 2014

_____
Edward L. Cheatham

*Larry Gist*
_____
Larry Gist

_____
James Teeples

15

Date: October 30, 2014

_____
Edward L. Cheatham

_____
Larry Gist

_____
James Teeples

15

Pulaski Rubber Company

By: _Del Lurie_

Its: _PRESIDENT_

R.C.A. Rubber Company

By: _Del Lurie_

Its: _President_

Pulaski Rubber Company Benefit Plan

By: _K. A. Tyler_

Its: _EXECUTIVE ADMINISTRATOR_



EXHIBIT

1

## MEMORANDUM OF AGREEMENT

*Edward L. Cheatham, et al v. The R.C.A. Rubber Company of America, et al*
U.S.D.C. Middle District of Tennessee (Columbia), Case No. 1:11-CV-00006

1. Payment of One Hundred Forty Thousand and 00/100 Dollars ($140,000.00) to Plaintiffs and their attorney. One half payable by January 30, 2014 and the balance payable by January 30, 2015, with the understanding that the first payment may be delayed by whatever approval or fairness hearing may be required by the judicial process.

2. Assignment to Plaintiffs of the Parr Industries note (by January 30, 2014 or such later date as necessitated by Court approval of settlement). Plaintiff will have discretion to maintain the note or conduct whatever transaction it deems appropriate *vis a vis* the note for the benefit of Plaintiffs, subject to Court approval.

3. If the Defendants agree by November 1, 2015 that payment of $70,000.00 in addition to the payment in Paragraph 1 above will be made, then such payment will be made by January 30, 2016 (agreement or disagreement to be made in writing to the present mediator and opposing counsel). If Defendants don't agree, then a forensic examination will be conducted under the direction of the present mediator to determine the ability, financial status and viability of R.C.A. to make such payment, utilizing factors including but not limited to those contained in the Dennis Medica report of November 26, 2013 with respect to R.C.A.'s ability to pay. If a determination is made that Defendants can pay the additional $70,000.00 (or whatever lesser amount if they can not pay the $70,000.00) then they shall pay said amount in accordance with the determination made per the standards referred to in this paragraph.

4. If the Defendants agree by November 1, 2016 that payment of $70,000.00 in addition to the payments in Paragraphs 1 and 3 above will be made, then such payment will be made by January 30, 2017 (agreement or disagreement to be made in writing to the present mediator and opposing counsel). If Defendants don't agree, then a forensic examination will be conducted under the direction of the present mediator to determine the ability, financial status and viability of R.C.A. to make such payment, utilizing factors including but not limited to those contained in the Dennis Medica report of November 26, 2013 with respect to R.C.A.'s ability to pay. If a determination is made that Defendants can pay the additional $70,000.00 (or whatever lesser amount if they can not pay the $70,000.00) then they shall pay said amount in accordance with the determination made per the standards referred to in this paragraph.

5. A formal written release and/or settlement agreement will memorialize the terms agreed to herein and will be negotiated and executed in accordance with the terms herein.

1

6.   Conditional dismissal subject to keeping open only the terms and amounts of payment contained herein. In the alternative, the Court will retain jurisdiction with respect to such issues.

7.   Denial of liability/no prevailing party provision.

8.   Each party to be responsible for its own costs and expenses including attorney fees.

9.   Final releases to be exchanged and executed by January 25, 2014 and subject to Court approval. If there is agreement to this MoA a fairness hearing and class proceedings may necessitate extension of these various time limitations. No interest will accumulate if there are such extensions or other reasonable delay and there will be reasonable accommodation for delays due to necessary judicial or judicially imposed process.

10.  If the parties have disagreement over any of the term(s) of the settlement agreement and release or this Memorandum or any negotiation of, compliance with or implementation of said terms, and cannot resolve such issues by themselves, they agree to promptly submit such issue(s) to mediation with the present mediator. If the parties cannot then reach agreement, the mediator will have the authority to make a binding determination.

11.  Parties are to execute all documents necessary for settlement.

12.  All signatures in counterpart constitute complete and enforceable agreement and indicate that the parties have consulted with counsel as to this document, its content and its execution and that they have authority to enter into such an agreement.

January ___, 2014

_____
Edward L. Cheatham

_____
Larry Gist

_____
William Holt

_____
James Teeples

_____
Stephen M. Pincus, Esq.
Counsel for Plaintiffs Edward L.
Cheatham, Larry Gist, William
Holt and James Teeples

2

_____ (VP)
_____ (PRES)
for Defendants

**Jack Fuchs** Digitally signed by Jack Fuchs
DN: cn=Jack Fuchs, o, ou,
email=jack.fuchs@thompsonhine.com, c=US
Date: 2014.01.09 11:50:34 -05'00'

Jack F. Fuchs, Esq.
Counsel for Defendants The R.C.A. Rubber
Company of America, The Pulaski Rubber
Company and The Pulaski Rubber Company
Benefit Plan

3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

EDWARD L. CHEATHAM, et al.
        Plaintiffs,

v.

THE R.C.A. RUBBER COMPANY OF
AMERICA, et al.

        Defendants.

CASE NO. 1:11-CV-00006



EXHIBIT
2

## BINDING DETERMINATION

The parties have submitted issues per the process set forth in Paragraph 10 of the Memorandum of Agreement ("Memorandum") endorsed by parties and counsel, dated January 8, 2014, and which the Court has ordered the parties to comply with. That provision states:

> 10.    If the parties have disagreement over any of the term(s) of the settlement agreement and release or this Memorandum or any negotiation of, compliance with or implementation of said terms, and cannot resolve such issues by themselves, they agree to promptly submit such issue(s) to mediation with the present mediator. If the parties cannot then reach agreement, the mediator will have the authority to make a binding determination.

The parties conferred with the mediator pursuant to the Order and Paragraph 10 on October 14, 15 and 20, 2014, after a continuance by the mediator from the date originally scheduled for such consultation, October 8, 2014.

The undersigned notes that Defendants take exception to this process for various reasons, including those previously stated for the record before the Honorable Court and during the hearing on September 3, 2014. In the instant reconciliation and determination process the Defendants take exception to the enforceability of the January 8, 2014 Memorandum of Agreement and state that they lack the wherewithal to perform and may be unable to perform for other reasons.

Defendants have asked that I consider the issues they raise with respect to capacity to perform and enforceability and I respectfully decline in light of the Order of the Court upholding enforceability and the fact that the January 8, 2014 Memorandum is enforceable for the reasons recognized by the Court and by virtue of its express terms.

Likewise, Paragraph 10 is limited as to my role and scope of involvement, particularly as it may pertain to material re-negotiation of material terms of the Memorandum. Such a role is not anticipated or appropriate per Paragraph 10.

Besides various drafting and verbiage issues that the parties should be able to reconcile themselves, there remain the following major issues and competing positions that the parties have attempted to resolve pursuant to Paragraph 10 but where there is still disagreement. I shall state the positions along with my determinations directly thereafter.

## STATEMENT OF ISSUES

1. Responsibility for and cost of class notice. Plaintiffs agree to send and pay for the notice but request that Defendants provide census data since November 1, 2010. Even though Defendants sponsored the members' pension plan, they now contend that current addresses for the bulk of members are not known to them due at least in part to the fact that many members took lump sum distributions. They claim there is no census that is available to R.C.A. for Pulaski's retirees.

    I hereby determine that the parties confer in a bi-lateral good faith attempt to determine the identity of these class members and satisfy every reasonable request for materials and documents in order to obtain the identities of class members through whatever records or materials exist as to the identity of these employees.

2. As to the first payment of $70,000.00 mentioned in paragraph 1 of the Memorandum of Agreement: Plaintiffs ask that it be paid no later than 45 days after final approval. Defendants claim that they are unable to pay this money as requested and that such performance is impossible and therefore unreasonable. In making their argument, Defendants cite information that is not dispositive of the issue and that also was mediation privileged and generated in order to assist the parties and mediator in their negotiation, nothing more. Defendants further contend that the lump sum payment is not consistent with the Memorandum.

    I hereby determine that the parties accepted and agreed to this lump sum payment and acknowledged the completeness and enforceability of such agreement and the

fact that they consulted with counsel in such acceptance and agreement. The Memorandum speaks expressly to this point. The decisions and Memorandum support this. The Court recognized this at the September 3, 2014 hearing.

All parties agreed that this payment of $70,000.00 would be made by January 30, 2014, although it was anticipated and expressly agreed that a fairness hearing and class proceedings or other judicial process attendant to class proceedings might necessitate some reasonable extension. Accordingly, I further determine that such payment will be made no later than 45 days after final approval.

3. As to the second payment of $70,000.00, Plaintiffs request that it be made the latter of January 30 2015 or 45 days after final approval. They make the same arguments as are contained in paragraph 2 above. It should be noted that it was agreed by the parties that this amount would be paid on January 30, 2015 and that to this date, nothing has been paid as agreed.

> I hereby determine that said amount is due as is expressly agreed and memorialized by the parties and that it will be paid no later than 90 days after final approval, or in 12 monthly installments beginning 45 days after final approval, on the condition that said installments will add reasonable interest for the unpaid balance.

4. The fourth issue that Plaintiffs posit as subject to reconciliation and/or determination is who bears the costs for forensic examination under paragraphs 3 and 4 of the Memorandum if Defendants do not choose to pay the amounts mentioned in those paragraphs. Plaintiffs contend it should be defendants as it is their burden. In addition to arguments referenced above, Defendants argue that the Memorandum does not expressly impose such cost on them.

> I hereby determine that this issue is not yet ripe for determination and that if there arises a necessity for same in the future, I shall still be available to provide the process called for in paragraph 10.

5. Date of assignment of the Note. Plaintiffs contend no later than 45 days after final approval. Defendants now contend that they retain the note because of their alleged financial condition.

> I hereby determine that the parties agreed and accepted, after consulting with counsel that assignment of the Note would take place by January 30, 2014, or such later date as necessitated by the Court approval process. Paragraph 2 of the

Memorandum and the parties' express agreement was that however the note was utilized by Plaintiffs, the benefit of the Note would inure to them. To date, the Note remains with Defendants with no benefit having inured to Plaintiffs.

I hereby determine that the Note be transferred to Plaintiffs or their designee, so long as such designee is approved by the Court, no later than 45 days after final approval by the Court. Defendant contends that such a determination would be to re-write the Memorandum. Paragraph 2 states, and the parties agreed and accepted with the advice of counsel, "Assignment to Plaintiffs of the Parr Industries note....". It could not be clearer.

6. Finally, Plaintiffs contend that payments made on the note since January 8, 2014 and after agreement to assign the note, should be disgorged and paid to Plaintiffs for their benefit on the premise that agreement was based in part upon the value of the note as of the date of agreement and that given the agreed dates of assignment of the note (January 30, 2014), it was never agreed or anticipated that the benefit of the Note would inure to the benefit of Defendants. Plaintiffs contend that at the very least such funds should have been paid in escrow since the issue was raised with Defendants in February 2014.

Defendants posit that the MOA imposes no such obligation and continue to seek that the MOA be terminated. Defendants rely in part on Plaintiffs seeking to "transfer" the note; not "assign" it and in essence, such action is a re-write and abrogation of the Memorandum and as such, grounds for termination.

I hereby determine that characterization of the transfer/assignment of the note is subject to reconciliation per the provisions of paragraph 10 of the Memorandum but that in any event, paragraph 2 of same is clear and unequivocal in expressing an anticipation of Defendant's termination of rights to the note and its benefits at the beginning of 2014. Therefore, the parties will cooperate in determining and notifying Plaintiffs, what interest has been paid on the Note since January 30, 2014. Said amount, along with the note and any other interest or benefit of the note that will accumulate from now on will be held in escrow for the benefit of Defendants until final approval. 45 days after said final approval, all said accrued benefits, along with the note will be assigned and transferred to Plaintiffs or the Trustee or designee, consistent with the Court's approval.

As noted above, Defendants raise several other positions which they previously raised with the Court at the September 3, 2014 hearing, including alleged abrogation and breach of

4

Plaintiffs, impossibility of performance as it relates to Rule 23, the impropriety of my role per paragraph 10 of the Memorandum and financial incapacity to perform. These issues have been for the most part previously raised in the papers before the Court and subsequently rejected by the Court's order. Essentially, the parties accepted and agreed to the terms of the Memorandum of Agreement signed by them on January 8, 2014. That agreement acknowledged that it was complete and enforceable and that the parties sought counsel in their deliberation with respect to same and that when they and counsel signed the agreement, they had authority to do so.

The parties are hereby ordered to complete, endorse and submit to the Court a Settlement Agreement and Release consistent with the determinations herein within ten (10) days hereof or no later than October 31, 2014.

IT IS HEREBY SO DETERMINED.

October 21, 2014

_____
Jerome F. Weiss

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

|  |  |
|---|---|
| EDWARD L. CHEATHAM, LARRY GIST, WILLIAM HOLT, AND JAMES TEEPLES, ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY SITUATED, | Case No. 1:11-cv-0006 <br><br> Judge Sharp |
| Plaintiffs, |  |
| vs. |  |
| THE R.C.A. RUBBER COMPANY OF AMERICA [sic], THE PULASKI RUBBER COMPANY, THE PULASKI RUBBER COMPANY BENEFIT PLAN, AND DOES 1 THOUGH 20., | |
| Defendants. | |



## TO ALL MEMBERS OF THE FOLLOWING CLASS:

Retirees who were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Services Workers International Union, AFL-CIO/CLC, or predecessor unions in collective bargaining and who retired from Pulaski, having met the requirements for retiree health benefits specified in the collectively bargained agreement in place at the time of the former employee's retirement, as well as their eligible dependents, spouses and surviving spouses who met (and who as of October 31, 2010, were continuing to meet) the eligibility requirements for such benefits, and whose retiree health care benefits were terminated effective November 1, 2010, subject to continuation under COBRA.

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION.

Case 1:11-cv-00006   Document 228-1   Filed 02/03/15   Page 27 of 75 PageID #: 6562

This Notice advises you of a proposed class action settlement (the "Settlement"). The Settlement will provide an amount of at least $100,000, but no more than $280,000, payable by Defendants in periodic installments, as well as the assignment of a certain Parr Industries Note and its proceeds, including periodic payments and liquidation or payoff, to provide retiree healthcare benefits for Pulaski retirees whose retiree healthcare benefits were terminated effective November 1, 2010, subject to continuation under COBRA. In this Notice, the Pulaski Rubber Company Benefit Plan is referred to as the "Plan." The Settlement resolves certain claims in a lawsuit over whether R.C.A. Rubber Company, Pulaski Rubber Company, and/or the Plan, improperly terminated retiree healthcare benefits in violation of the Labor Management Relations Act, *codified at* 29 U.S.C. §§ 141, *et seq.*, or the Employee Retirement Income Security Act of 1974, as amended, *codified at* 29 U.S.C. §§ 1001 *et seq.* These federal laws are commonly known as the "LMRA" and "ERISA," respectively. You should read this entire Notice carefully because your legal rights are affected whether you act or not.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **YOU CAN DO NOTHING NO ACTION IS NECESSARY TO QUALIFY TO RECEIVE A PAYMENT** | You do not need to do anything to receive a payment. Under the Settlement, a court-approved trustee will calculate the portion, if any, of the Settlement you are entitled to receive. |
| **YOU CAN OBJECT** | You can write to the Court about why you don't like the Settlement. |
| **YOU CAN GO TO A HEARING** | You can ask to speak in Court about the fairness of the Settlement. |

- Your rights and options, and the date by which you must object if you are opposed to the Settlement, are explained in this notice.

# WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ....................................................................... 5

1. Why did I get this notice? ...................................................... 5

2. How do I get more information? ............................................ 5

3. What is this lawsuit about? ................................................... 5

4. Why is this a class action? ................................................... 6

5. Why is there a Settlement? ................................................... 6

6. How do I know if I am part of the Settlement? ......................... 6

7. Can I exclude myself from the Settlement? ............................. 7

8. What am I giving up in the Settlement? .................................. 7

9. What does the Settlement provide? ........................................ 8

10. How much will my payment be? ............................................ 8

HOW YOU GET A PAYMENT ............................................................ 9

11. How can I get my payment? .................................................. 9

12. What happens to the payment if a Class Member died since
    November 1, 2010? ............................................................. 9

13. When will I get my payment? ................................................ 9

THE LAWYERS REPRESENTING YOU ............................................... 10

14. Do I have a lawyer in this case? ........................................... 10

OBJECTING TO THE SETTLEMENT ................................................. 10

15. What does it mean to object? ............................................... 10

16. How do I tell the Court that I don't like the Settlement? ......... 10

THE COURT'S FAIRNESS HEARING ................................................. 11

17. When and where will the Court decide whether to
    approve the Settlement? ...................................................... 11

18. Do I have to go to the fairness hearing? ............................... 12

19. May I speak at the hearing? ................................................ 12

**IF YOU DO NOTHING**................................................................. 13

**20. What happens if I do nothing at all?** ......................................... 13

**GETTING MORE INFORMATION**............................................ 13

**21. Are there more details about the Settlement?** ........................... 13

# BASIC INFORMATION

### 1. Why did I get this notice?

You or someone in your family may have been a Pulaski Rubber retiree or a spouse of a retiree whose health care benefits were terminated effective November 1, 2010, subject to continuation under COBRA.

The Court directed that you be sent this Notice because you have a right to know about a proposed Settlement of a class action lawsuit and about all of your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement and after objections and appeals, if any, are resolved, Defendants will make the payments that the Settlement allows.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Middle District of Tennessee, and the case is known as *Cheatham, et al. v. The R.C.A. Rubber Company of America, et al.*, Case No. 1:11-cv-00006. The person who sued is called a Plaintiff, and the companies and the people they sued, including the Plan, are called the Defendants.

### 2. How do I get more information?

You can contact Plaintiffs' counsel William T. Payne, Esquire and Stephen M. Pincus, Esquire, of Feinstein Doyle Payne & Kravec, LLC, 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, Pennsylvania 15219; info@fdpklaw.com; (412) 281-8400. Please do not contact the Court, R.C.A. Rubber Company, Pulaski Rubber Company, Pulaski Rubber Company Benefit Plan, or the Defendants' counsel with questions. They will not be able to answer your questions.

### 3. What is this lawsuit about?

This class action lawsuit was filed on January 27, 2011 in the United States District Court of the Middle District of Tennessee (Columbia) as Civil Action No. 1:11-cv-00006, seeking certain healthcare benefits for certain Pulaski retirees, their spouses and eligible dependents arising from termination of their healthcare benefits on November 1, 2010. The Complaint sought to recover from the Defendants

healthcare benefits under the Plan. The Court determined that the Defendants are liable to Plaintiffs, but the Court has not issued a final judgment.

Defendants have denied each of the claims and allegations of wrongdoing. Defendants deny that Plaintiffs are entitled to any relief of any kind.

### 4. Why is this a class action?

In a class action, one or more persons called Class Representatives sue on behalf of people who have similar claims. All of these people who have similar claims make up the Class and are Class members. One court resolves the issues for all Class members. Because the conduct alleged by Plaintiffs in this case affected a large group of people in a similar way, Plaintiffs filed the Complaint as a class action.

Pulaski Retirees Edward Cheatham, Larry Gist and James Teeples have been the Plaintiffs in this case and brought suit on behalf of the Class Members.

### 5. Why is there a Settlement?

The Court determined that the Defendants are liable to Plaintiffs, but the Court has not issued a final judgment. In the interim, both sides agreed to a Settlement. By agreeing to a Settlement, the parties avoid the costs and risks of further proceedings and an appeal, and the Class will get compensation. Additionally, the financial situation of the Defendants creates the potential that no benefits would be available for the Class and its members. The Class Representatives (Edward Cheatham, Larry Gist and James Teeples) and their attorneys believe that the Settlement is best for all Class members.

### 6. How do I know if I am part of the Settlement?

The Court has certified this case as a class action, in which everyone who fits the following description is a Class Member:

> Former employees of Defendant Pulaski Rubber Company ("Pulaski") who both were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, or predecessor unions (collectively the "Union") in collective bargaining and retired from Pulaski having met the requirements for retiree health care benefits specified in the collectively bargained agreement in place at the time of the former employee's retirement, as well as their eligible dependents, spouses and surviving spouses who met (and who as of

October 31, 2010, were continuing to meet) the eligibility requirements for such benefits, and whose retiree health care benefits were terminated effective November 1, 2010, subject to COBRA continuation.

### 7. Can I exclude myself from the Settlement?

In some class actions, class members have the opportunity to exclude themselves from a Settlement. This is sometimes referred to as "opting out" of a Settlement. You do not have the right to exclude yourself from the Settlement in this case. This case was certified as a class action under Federal Rules of Civil Procedure 23(b)(2) as a "non opt-out" class action because Plaintiffs alleged that Defendants acted or refused to act on grounds that apply generally to the Class, so that any judgment or resolution necessarily applies to all members in the Class. As such, it is not possible for any member in the Class to exclude themselves from the benefits of the Settlement. Therefore, you (as well as the Plaintiffs, the Plan, the Plan's fiduciaries, and any member of the Class, whether acting on their own behalf or on behalf of any persons they represent) will be bound by any judgments or orders that are entered in this Action.

### 8. What am I giving up in the Settlement?

Under this settlement, you will be receiving cash payments in exchange for giving up all rights to future retiree health benefits from The R.C.A. Rubber Company of America and The Pulaski Rubber Company.

Class Members will give up, or "release" the right to sue the Defendants over the same events and subject matter involved in *this* case, including whether Defendants breached their legal duties to provide retiree health benefits to Class Members. That means that even if you discover facts in the future that were not known at the time of the settlement, which you think demonstrate further violations by the Defendants related to this case, you may not sue them. Each class member assumes the risk that he or she may discover new information. Even if new information is discovered, the Settlement will be binding. You will retain your rights to receive your share of the Settlement Fund and to enforce the Settlement.

### 9. What does the Settlement provide?

In order to resolve the Plaintiffs' claims against them, Defendants have agreed to assign a certain Note/Mortgage on the Pulaski Rubber plant property with a remaining balance of less than $165,000 and pay an amount of at least $100,000, but no more than $280,000, in periodic installments to a Court-approved Settlement Administrator, who will be responsible for distributing the payment to you and other members of the Class. Certain reasonable fees and expenses, including those incurred by Class counsel, the Settlement Administrator and/or Escrow Agent that are approved by the Court, will be deducted from the Settlement Fund.

The Settlement Administrator will attempt to refinance the Note/Mortgage with Parr Industries who is the current owner of the Pulaski Rubber property and is obligated to make monthly payments through December 2019 on the Note/Mortgage. Refinancing the Note/Mortgage will result in a lump-sum payment to the Settlement Fund, which shortly thereafter will be distributed to Class Members or their Estate. If the Note/Mortgage is refinanced or otherwise monetized, it will likely be discounted by at least 20% and the amount received will be deposited in the Settlement Fund after expenses related to the transaction are deducted.

If Defendants make certain monthly payments through August 2016 and the Note/Mortgage is refinanced, the total amount of the Settlement will be approximately $220,000, less fees and expenses.

The first payment to Class Members, or their heirs or Estate will be made within 90 days of Final Approval.

### 10. How much will my payment be?

Your share of the Settlement Fund will depend on the number of full months you and other Class Members are alive after November 1, 2010 through October 31, 2014. You are not responsible for calculating the amount that you may be entitled to receive under the Settlement — this will be done by the Court-approved Settlement Administrator. You do not need to provide records, although you may be asked to provide information if you are a survivor of a Class Member and tax information. The Court-approved Settlement Administrator will make all calculations for you, and if you are entitled to a payment, will provide you with a statement showing the amount of your payment. Each Class Member Settlement Payment shall be subject to withholding for income tax to the extent that such withholding for income tax is required by law.

# HOW YOU GET A PAYMENT

**11.  How can I get my payment?**

The Settlement Administrator will deliver payment to you using your last known address as it appears in Defendants' records.  If your address has changed since 2010, you should contact Class Counsel at (412) 281-8400 or info@fdpklaw.com.

**12.  What happens to the payment if a Class Member died since November 1, 2010?**

If a Class Member has died, the payments may be made to the survivors of the Class Member or the Class Member's estate. Please contact Class Counsel at (412) 281-8400 or info@fdpklaw.com to make arrangements.

**13.  When will I get my payment?**

The Court will hold a hearing on _____, 201_, to decide whether to approve the Settlement. If the Judge approves the Settlement, appeals may follow. It is always uncertain when and how these appeals may be resolved, and resolving them can take time, perhaps more than a year.

If the settlement is approved and there are no appeals, you should receive a payment within ninety (90) days of the Court's Final Order approving the settlement.  Thereafter, payments will be made to you on an annual basis until all payments from the Defendants or on the Parr Note have been made into the Settlement Fund.

If the Parr Note is sold or refinanced after Final Approval and Defendants make the payments as required, all monies in the Settlement Fund will be distributed by August 2016.  If the Parr Note is not refinanced and Parr Industries continues to make the monthly payments on the Note, then the last distribution will be made in 2019.

## THE LAWYERS REPRESENTING YOU

### 14.    Do I have a lawyer in this case?

The Court appointed William T. Payne, Esquire and Stephen Pincus, Esquire, of Feinstein Doyle Payne & Kravec, LLC, to represent you and other Class Members. These lawyers are called Class Counsel. Class Counsel will not ask the Court for attorneys' fees and expenses.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with, but instead object to, the Settlement or some part of it.

### 15.    What does it mean to object?

Objecting is simply telling the Court that you do not like something about the Settlement. It will not have any bearing on your right to Settlement proceeds, if the Settlement is approved.

### 16.    How do I tell the Court that I don't like the Settlement?

You can object to the Settlement if you dislike any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter to the Court saying that you object to the Settlement in *Cheatham, et al. v. The R.C.A. Rubber Company of America, et al*, Case No. 1:11-cv-0006.  Be sure to include the case number, your name, address, telephone number, your signature, and the reasons you object to the Settlement.

 Mail the objection to Class Counsel listed below and to the Court at the addresses below. Your objection letter must be postmarked no later than _____, 201_. You must mail your objection by this date. If you fail to do so, the Court may not consider your objection.  Please send objections and other papers you want the Court to consider to each of the following addresses:

> Clerk, United States District Court
> Middle District of Tennessee
> 801 Broadway, Room 800
> Nashville, TN 37203

William T. Payne, Esq.
Stephen Pincus, Esq.
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, Pennsylvania 15219

Jack F. Fuchs, Esq.
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202

## ALL PAPERS SUBMITTED MUST INCLUDE THE CASE NUMBER 1:11-cv-00006 ON THE FIRST PAGE.

No one can object to the proposed Settlement, to the final judgment to be entered in this Action, to expenses, or otherwise to be heard, except by filing and serving written objections (and, if you wish to be heard at the Settlement Fairness Hearing, a written notice of intention to appear, as described below) in the form and manner, and by the date, required by this Notice. Any person who fails to object in the manner and by the date required will be deemed to have waived any objections and will be barred from raising such objections in this or any other action or proceeding.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you are not required to do so.

**17.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at ___ _.m. on _____, 201_, at the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, Tennessee 37203, in Courtroom __, __ Floor. This hearing may be rescheduled without additional notice.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court will also decide what amount of trustee expenses will be paid from the Settlement Fund. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 18.  Do I have to go to the fairness hearing?

No. Class Counsel will answer any questions the Court may have. You are, however, welcome to attend at your own expense. If you send an objection, you do not have to go to Court to talk about it. As long as your objection is postmarked by _____, 201_, the Court will consider it. You also may pay your own lawyer to attend, but it is not required.

### 19.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. You may also request to present witnesses and exhibits.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Fairness Hearing in *Cheatham, et al. v. The R.C.A. Rubber Company of America, et al*, Case No. 1:11-cv-0006."  Be sure to include your name, address, telephone number, and your signature. In the letter, you must identify your witnesses and exhibits.  Your Notice of Intention to Appear must be postmarked no later than _____, 201_, and sent to the Clerk of the Court at Clerk, USDC, Middle District of Tennessee 801 Broadway, Room 800, Nashville, TN 37203.

Any Class Member who wishes to object to (i) the fairness, reasonableness, or adequacy of this Settlement Agreement, (ii) to the certification of this action as a class action, and/or (iii) the adequacy of the Plaintiffs and Class Counsel, subject to order of the Court, must file with the Clerk of the Court and serve all counsel, no later than ten (10) days before the Fairness Hearing, a statement of the objection, as well as the specific reason(s), if any, for each objection, including any legal support that the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of the objection. Any Class Member who timely files and serves a written objection, as described herein, may appear at the Fairness Hearing to object to any aspect of the fairness, reasonableness, or adequacy of the class certification, the appointment of the Plaintiffs as named plaintiffs and Class Counsel, or any aspect of the Settlement Agreement. Class Members filing a written objection or appearing at the Fairness Hearing may do so either on their own or through an attorney hired at their own expense.

The statement of the objection can be filed with the Clerk of Court by sending to Clerk, USDC, Middle District of Tennessee, 801 Broadway, Room 800, Nashville, TN 37203. Service on counsel can be effected by sending by ordinary first class mail to William T. Payne, Esq. and Stephen Pincus, Esq., Feinstein Doyle Payne & Kravec, LLC, 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh,

Pennsylvania 15219, and to Jack F. Fuchs, Esq., Thompson Hine LLP, Suite 1400, 312 Walnut Street, Cincinnati, Ohio 45202.

If a Class Member hires an attorney to represent him or her (at his or her own cost and expense), the attorney must file a notice of appearance with the Clerk of the Court no later than ten (10) days prior to the Fairness Hearing or as the Court may otherwise direct, and serve a copy of such notice of appearance on all counsel for the Parties. Unless the Court finds good cause for an exception, any Class Member (or attorney) who fails to comply with these procedures and timing will waive any rights the Class Member may have to appear separately and/or to object, and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Action.

## IF YOU DO NOTHING

### 20.  What happens if I do nothing at all?

The Settlement does not require you to do anything, and there is no penalty for doing nothing at all. If you are entitled to a Settlement payment, you will receive a payment as discussed at your last known address, assuming that the Settlement is approved.   Class Counsel requests that send back the enclosed form to the Settlement Administrator in order to confirm or update your address and tax indemnification information.

## GETTING MORE INFORMATION

### 21.  Are there more details about the Settlement?

This notice summarizes the proposed Settlement.  You can request a copy of the full Settlement Agreement from Class Counsel by sending an email at info@fdpklaw.com or by calling (412) 281-8400.  You may also inspect the papers filed in this Action at the office of the Clerk of Court, United States Courthouse, 801 Broadway, Room 800, Nashville, TN 37203 during normal business hours.

DATE: _____, 201_.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

EDWARD L. CHEATHAM, LARRY GIST, :
WILLIAM HOLT, AND JAMES :
TEEPLES, ON BEHALF OF :
THEMSELVES AND ALL OTHER :
PERSONS SIMILARLY SITUATED, :
                                   :
     Plaintiffs, :
                                    :
     vs. :
                                    :
THE R.C.A. RUBBER COMPANY OF :
AMERICA [sic], *et al.,* :
                                    :
     Defendants. :

Case No. 1:11-cv-0006

Judge Sharp



EXHIBIT 4

**ORDER PRELIMINARILY APPROVING SETTLEMENT, AMENDING
CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT, APPROVING
FORM AND MANNER OF NOTICE, AND SCHEDULING HEARING ON FAIRNESS
OF SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(e)**

     The joint motion of Plaintiff and Defendants for an Order (1) preliminarily approving

the Settlement of the above-captioned action pursuant to the terms and conditions of the

Settlement Agreement (the "Agreement"), dated as of October 11, 2014; (2) approving the

form of Notice and directing the manner of delivery of the Notice; (3) amending the

previously-granted class certification under Federal Rules of Civil Procedure 23(b)(2); and (4)

scheduling a hearing to consider the fairness of the Settlement pursuant to Federal Rule of

Civil Procedure 23(e) has come before the Court.

     Upon consideration of the Agreement, the joint motion and memorandum in support

and exhibits attached thereto, the pleadings and records on file, and good cause appearing, it

is hereby **ORDERED** as follows:

1.     To the extent not otherwise defined herein, all capitalized terms shall have the same meaning as used in the Agreement.

2.     The Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including all members of the Plaintiff Class and all Defendants.

3.     The Settlement documented in the Agreement is hereby **PRELIMINARILY APPROVED** as appearing on its face to be fair, reasonable, and adequate. The Court **FINDS** that the Settlement was the product of serious, informed, and extensive arms-length negotiations between counsel for Plaintiffs and for Defendants and that there is a genuine controversy between the parties involving the Defendants' compliance with the Labor Management Relations Act ("LMRA"), *codified at* 29 U.S.C. §§ 141, *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA") *codified at* 29 U.S.C. §§ 1001, *et seq.*

4.     The Court **FINDS** that the form of Notice proposed by the Parties is appropriate and hereby **APPROVES** such Notice. Such Notice shall be mailed by first-class mail, postage prepaid to the last known address of all known Class members within fifteen (15) days of entry of this Order. Defendants' Counsel will ensure that the Notice shall be handled in the manner set forth in and required by the Agreement, and shall file an affidavit attesting to the mailing of the Notice with the Court at or before the Settlement Fairness Hearing.

5.     The Court further **FINDS** that the form and manner of delivery of the Notice directed hereby and in the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.

6.     The Court, on joint motion of the Parties, hereby **AMENDS** the certification of the Class to include:

2

Former employees of Defendant Pulaski Rubber Company ("Pulaski") who both were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, or predecessor unions (collectively the "Union") in collective bargaining and retired from Pulaski having met the requirements for retiree health care benefits specified in the collectively bargained agreement in place at the time of the former employee's retirement, as well as their eligible dependents, spouses and surviving spouses who met (and who as of October 31, 2010, were continuing to meet) the eligibility requirements for such benefits, and whose retiree health care benefits were terminated effective November 1, 2010, subject to COBRA continuation.

7.     The Court **FINDS** that maintenance of this Action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) remains proper. Specifically, the Court **FINDS** that: (a) the number of members of the Class is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the named Plaintiffs are typical of the claims of the Class; (d) the named Plaintiffs fairly and adequately represent the interests of the Class; and, (e) Defendants have acted or refused to act on grounds generally applicable to the Class.

8.     The Court further **FINDS**, pursuant to Federal Rule of Civil Procedure 23(a), that Class Representatives Edward L. Cheatham, Larry Gist, and James Teeples have adequately represented and will adequately represent the Class as Class Representatives, and remain **APPROVED** as Class Representatives. The Court **ACKNOWLEDGES** that former Class Representative William Holt is deceased.

9.     The Court **FINDS**, pursuant to Federal Rule of Civil Procedure 23(a), that the firm of Feinstein Doyle Payne & Kravec, LLC has adequately represented and will adequately represent the Class as Class Counsel. Accordingly, William T. Payne, Esq. and Stephen Pincus, Esq. of the Law Offices of Feinstein Doyle Payne & Kravec, LLC remain **APPROVED** and **APPOINTED** as counsel for the Class. Appointment of the above-named counsel as Class Counsel is supported by the significant work that Class Counsel has performed in identifying,

3

investigating the potential claims in this Action, the experience of Class Counsel in handling class actions and LMRA and ERISA actions, Class Counsel's knowledge of LMRA and ERISA, and the resources that Class Counsel has committed to the prosecution of this Action.

10. A hearing (the "Settlement Fairness Hearing") pursuant to Federal Rule of Civil Procedure 23(e) is hereby **SCHEDULED** to be held before the Court on _____, 2014, at ___.m. in Courtroom ___ for the following purposes:

a. to determine whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

b. to determine finally whether this Action satisfies the applicable prerequisites for class action treatment under Federal Rules of Civil 23(a) and 23(b)(2);

c. to determine whether the Plaintiffs have acted independently and that their interests are identical to the interests of the Plaintiff Class;

d. to determine whether the Order Approving Settlement as provided under the Agreement should be entered and whether the Released Parties should be released of and from the Released Claims, as provided in the Agreement;

e. to determine whether the bar order provisions in the Agreement should be entered barring (a) any action against Defendants, any member of the Class, or Class Counsel based on the amount of any Settlement Claim issued pursuant to the Court approved Plan of Allocation, and (b) all Plaintiff and Class members from instituting or prosecuting, either directly, indirectly or in a representative capacity, any other action in any court from asserting any Released Claim against any Released Persons;

f. to determine whether the proposed Plan of Allocation of the Settlement Fund is fair, reasonable, and adequate and should be approved by the Court;

4

g.    to determine whether the proposed trustee's fees and expenses are fair, reasonable, and adequate and should be approved by the Court; and

h.    to rule upon such other matters as the Agreement contemplates and as the Court may deem just and proper.

11.    The Court having determined preliminarily that this Action may proceed as a class action, with no right to opt or elect out of the Class under Federal Rule of Civil Procedure 23(a) and (b)(2), Class members shall be bound by any judgment in this Action, subject to the Court's final determination at the Settlement Fairness Hearing as to whether this Action may so proceed.

12.    The Court shall consider comments or objections to the certification of the Class under Federal Rule of Civil Procedure 23(a) and (b)(2), the Settlement, the allowance of the trustee's reasonable fees and expenses at the Settlement Fairness Hearing, but only if such comments or objections and any supporting papers are filed with the Clerk of the Court, United States District Court for the Middle District of Tennessee, 801 Broadway, Room 800, Nashville, Tennessee 37203, no less than ten (10) days before the Settlement Fairness Hearing. Written objections must provide a detailed statement of the objector's specific objections to any matter before the Court and all the grounds therefor, and must include all documents such person wishes the Court to consider.

13.    Attendance of members of the Class at the hearing is not necessary. However, persons wishing to be heard orally in opposition to the approval of the Settlement or the payment of the proposed trustee's reasonable fees and expenses from the Settlement Fund must state in their written objection(s) their intention to appear at the hearing. Such persons must identify in their written objections the names of any witnesses they may call to testify and any exhibits they intend to introduce into the evidence at the Settlement Fairness Hearing.

5

Class members do not need to appear at the hearing or take any other action to indicate their approval of the Settlement.

14.     No person shall be entitled to object to the proposed Settlement, to the final judgment to be entered in this Action, or otherwise to be heard, except by filing and serving written objections (and, if such person wishes to be heard at the Settlement Fairness Hearing, a written notice of intention to appear) in the form and manner, and by the date required by the Notice. Any person who fails to object in the manner and by the date required shall be deemed to have waived any objections, and shall forever be barred from raising such objections in this or any other action or proceeding.

15.     Pending final determination of whether the Settlement should be approved, Plaintiffs and Defendants, and all members of the Class are each hereby **BARRED** and **ENJOINED** from instituting or prosecuting any action that asserts any Released Claim against any Released Person.

16.     If the Agreement is terminated pursuant to the provisions thereof, this Preliminary Order shall be null, void, and of no further force or effect, and each party to the Agreement shall be restored to his, her, or its respective position as it existed prior to the execution of the Agreement.

17.     The Court retains jurisdiction for purposes of implementing the Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

**SO ORDERED** this _____ day of _____ , 2014.

_____
United States District Judge
United States District Court for the Middle District
of Tennessee

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

EDWARD L. CHEATHAM, LARRY GIST, :
WILLIAM HOLT, AND JAMES :
TEEPLES, ON BEHALF OF :
THEMSELVES AND ALL OTHER :
PERSONS SIMILARLY SITUATED, :

     Plaintiffs, :

    vs. :

THE R.C.A. RUBBER COMPANY OF :
AMERICA [sic], *et al.*, :

    Defendants. :

Case No. 1:11-cv-0006

Judge Sharp



## ORDER AND FINAL JUDGMENT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58

This matter came on for a final hearing on _____ __, 2014, on the proposed settlement (the "Settlement") of the claims of Plaintiffs on behalf of themselves and the Class against the Defendants (the "Claims") in this class action. The issues having been duly heard,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.    To the extent not otherwise defined herein, all capitalized terms shall have the same meaning as used in the Settlement Agreement (the "Agreement").

2.    The Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including all members of the Plaintiff Class and all Defendants.

3.    The Court hereby **APPROVES** and **CONFIRMS** the Settlement embodied in the Agreement as being a fair, reasonable, and adequate settlement and compromise of the Claims, and **ORDERS** that the Agreement shall be herewith effective, binding, and enforced according to its terms and conditions. Among the factors considered by the Court in concluding that the

Settlement is fair, reasonable, and adequate are the following **FINDINGS**: (1) that cases involving retiree health claims represent an unsettled and developing area of the law; (2) that Defendants have asserted numerous substantive defenses; (3) that the Settlement removes the risks, delay, and costs to the Plaintiff Class associated with continued litigation and delivers assured benefits to the Class; (4) that no member of the Class has objected to the Settlement; and, (5) that counsel for the Class and for Defendants, each of whom is well-experienced in Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Action of 1974, as amended ("ERISA") litigation and class action matters, has represented to the Court their respective beliefs that the Settlement is fair, reasonable and adequate.

4.     The Court **FINDS** that the Settlement has been negotiated vigorously and at arms-length between Defendants and their counsel and Plaintiffs and their counsel on behalf of themselves and the Plaintiff Class. The Court further **FINDS** that, at all times, the Plaintiffs have acted independently and that their interests are identical to the interests of the Plaintiff Class. The Court **HOLDS** that the Settlement is a fair, adequate and reasonable resolution of the Plaintiffs' claims on behalf of the Plan and the Class against the Defendants.

5.     The Court further **FINDS** that the form and manner of delivery of the Notice directed hereby and in the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.

6.     The Court **FINDS** that the Notice transmitted to the Plaintiff Class, pursuant to the Preliminary Approval Order [Doc. __] concerning the Settlement and the other matters set forth therein, is the best notice practicable under the circumstances and included individual notice to all members of the Plaintiff Class who could be identified through reasonable efforts.

7. The Court **HOLDS** that the Notice provides valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Agreement, to all persons entitled to such notice, and that the Notice has fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

8. The Court, upon joint motion of the Parties, hereby **AMENDS** the certification of the class to include:

> Former employees of Defendant Pulaski Rubber Company ("Pulaski") who both were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, or predecessor unions (collectively the "Union") in collective bargaining and retired from Pulaski having met the requirements for retiree health care benefits specified in the collectively bargained agreement in place at the time of the former employee's retirement, as well as their eligible dependents, spouses and surviving spouses who met (and who as of October 31, 2010, were continuing to meet) the eligibility requirements for such benefits, and whose retiree health care benefits were terminated effective November 1, 2010, subject to COBRA continuation.

9. The Court **APPROVES** the maintenance of this Action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). Specifically, the Court **FINDS** that: (a) the number of members of the Class is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the named Plaintiffs are typical of the claims of the Class; (d) the named Plaintiff fairly and adequately represents the interests of the Class; and, (e) Defendants have acted or refused to act on grounds generally applicable to the Class.

10. The Court hereby **DISMISSES** the Complaint against the Defendants with prejudice on the merits, and without taxation of costs in favor of or against any Party.

11. As of the date of Final Approval of Settlement, the Plaintiffs and each member of the Class on their own behalf and on behalf of their respective heirs, executors, administrators,

past and present partners, officers, directors, agents, attorneys, predecessors, and assigns, shall have released each and all of the Released Persons from the Released Claims.

12. Plaintiffs, the Class Members and Defendants are hereby permanently **BARRED** and **ENJOINED** from instituting or prosecuting, either directly or indirectly, any action in any court against any Defendants, their Related Parties, Defendants' Counsel, any member of the Settlement Class, or Class Counsel based on Defendants assigning the note and making the payments required by the Agreement as part of the Settlement.

13. The Court hereby **DECREES** that none of the Agreement, the Settlement or this Order and Final Judgment is an admission or concession by any of the Defendants of any liability or wrongdoing.

14. The Court **RETAINS** jurisdiction for purposes of implementing the Agreement and the Settlement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement and the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

15. This Court, pursuant to Federal Rule of Civil Procedure 58, **ENTERS** final judgment on the claims of the Plaintiffs against Defendants and on the Settlement that resolved those claims as approved by the Court.

     **SO ORDERED** this _____ day of _____ , 2015.

 

                                        _____
                                        United States District Judge
                                        United States District Court for the Middle District of Tennessee

THIS INSTRUMENT PREPARED BY:

JOE F. FOWLKES
ATTORNEY AT LAW
PULASKI, TENNESSEE

**THE PULASKI RUBBER COMPANY**

EXHIBIT

6

**TO...............DEED**

**PARR INDUSTRIES, INC.**

FOR AND IN CONSIDERATION of the sum of $350,00.00, cash in hand paid, the receipt of which is hereby acknowledged, THE PULASKI RUBBER COMPANY, a Tennessee Corporation, has this day bargained and sold and does hereby sell, transfer and convey unto PARR INDUSTRIES, INC., a Tennessee Corporation, its successors and assigns, in fee simple, the following described real estate:

A tract of land in the 11th Civil District of Giles County, Tennessee, a portion of tract is in the City of Pulaski, Tennessee, lying on the South end of Eleventh Street, on the South side of the Tennessee Southern Railroad and being more particularly described as follows:

Beginning at a point at the intersection of Eleventh Street and the centerline of Tennessee Southern Railroad; thence,

With the center of said railroad thence S 76 deg. 30' 15" E a distance of 292.91'; thence,
A distance of 392.36' along the arc of a curve to the right having a radius of 2572.96', a delta angle of 8 deg. 44' 14" and a chord bearing of S 70 deg. 25' 29" E, with a chord length of 391.98'; thence,
A distance of 286.79' along the arc of a curve to the right having a radius of 1917.35', a delta angle of 8 deg. 34' 12" and a chord bearing of S 60 deg. 16' 28" E, with a chord length of 286.52'; thence,
With the west boundary line of the property of John Dale Crow, Jr. as recorded in Deed Book 297, page 553, ROGCT, S 19 deg. 58' 09" W, passing a 24 inch double Locust at a distance of 100.17', a total distance of 149.09' to the center of Richland Creek; thence,
With the center of said creek S 85 deg. 11' 07" W a distance of 95.35'; thence,
S 66 deg. 48' 42" W a distance of 127.65'; thence,
S 64 deg. 12' 43" W a distance of 183.36'; thence,
S 57 deg. 39' 08" W a distance of 267.33'; thence,
With the east boundary line of the property of Robert John Sirois as recorded in Deed Book 334, page 159, ROGCT, N 22 deg. 20' 49" W, passing an iron rod set at a distance of 70.50', a total distance of 296.90' to an iron rod set; thence,
With the north boundary line of said property of Robert John Sirois N 76 deg. 38' 18" W, passing an iron rod set at a distance of 1301.33', a total distance of 1311.16' to the center of a ditch; thence,
With the center of said ditch, the east boundary line of the property of Wakefield Realty, LLC as recorded in Deed Book 312, page 781, ROGCT, N 04 deg. 18' 36" E, passing an iron rod set at a distance of 350.73', a total distance of 452.02' to the center of Tennessee Southern Railroad; thence,

With the center of said railroad S 76 deg. 30' 17" E a distance of 1137.23' to the point of beginning and containing 20.76 acres more or less according to a survey by Cleghorn Land Surveying, LLC dated February 17, 2009, Job No. 2009-019.

And being the same property acquired by the undersigned by deeds appearing of record in Deed Book 232, page 155 and Deed Book 144, page 525, Register's Office, Giles County, Tennessee.

The above described real estate is subject to a sanitary sewer along the North side of the tract and a water line and easement across the SW side of said property. Said property is also subject to an electric power line along the SW side of the tract to a water pumping station building, the SW corner of the tract. Said real estate is also subject to the CSX Railroad 100 foot Charter right of way across the northern portion of the tract surveyed.

Also conveyed is a perpetual easement and right of way from the property above described southerly through and across the property south of the above described property to Richland Creek for the purpose of obtaining water from said creek, together with the right to install and maintain pipes, pumps and other necessary equipment in, on and through said property lying south of the above described property.

This conveyance is also subject to an easement ten (10) feet in width for farm purposes reserved by W.J. Johnson, Et Ux, in Deed Book 140, page 468, Register's Office, Giles County, Tennessee.

As mentioned in Deed Book 140, page 468, Register's Office, Giles County, Tennessee, approximately 1.20 acres of said property is subject to a right-of-way for railroad purposes.

TO HAVE AND TO HOLD said above described real estate unto the said PARR INDUSTRIES, INC., its successors and/or assigns, in fee simple forever.

THE PULASKI RUBBER COMPANY COVENANTS with said grantee, its successors and/or assigns, that it is lawfully seized and possessed of the above described real estate, that the same is unencumbered, and that it has a good and lawful right to sell and convey the same, and it binds itself, its successors and/or assigns, to forever warrant and defend the title thereto against the lawful claims of all persons whomsoever.

POSSESSION shall pass to the grantee with delivery of deed.

The 2009 property TAXES shall be prorated.

THIS THE _21_ DAY OF _December_, 2009.

THE PULASKI RUBBER COMPANY

By: _____ President
                              Title

STATE OF _OHIO_
COUNTY OF _SUMMIT_

Before me, the undersigned, of the state and county mentioned, personally appeared _S. D. PRICE_, with whom I am personally acquainted, and who, upon oath, acknowledged such person to be _PRESIDENT_ of The Pulaski Rubber Company, the within named bargainor, and that such _PERSON/OFFICER_, executed the foregoing instrument for the purpose therein contained, by personally signing the name of The Pulaski Rubber Company as _S. D. PRICE_.

Witness my hand and seal at office in _AKRON, OHIO_ this the _21st_ day of _DECEMBER_, 2009.

_Kathryn A. Tyler_
NOTARY PUBLIC

MY COMMISSION EXPIRES: _8/25/2014_

STATE OF TENNESSEE
COUNTY OF GILES

I hereby swear or affirm that the actual consideration for this transfer or value of the property transferred whichever is greater is $350,000.00, which is greater than or equal to the amount which property transferred would command at a true and voluntary sale.

_____
AFFIANT

SUBSCRIBED AND SWORN to before me this the _____ day of _____, 2009.

Notarize
Here →

_____
NOTARY PUBLIC

EXPIRES:_____

EE:     Parr Industries, Inc.

_____

_____

THE PULASKI RUBBER COMPANY

TO ........... DEED

PARR INDUSTRIES, INC.

FOWLKES & GARNER
AN ASSOCIATION OF ATTORNEYS
P.O. BOX 577
109 WEST MADISON STREET
PULASKI, TENNESSEE 38478

THIS INSTRUMENT PREPARED BY:



JOE F. FOWLKES
ATTORNEY AT LAW
PULASKI, TENNESSEE


**PARR INDUSTRIES, INC.**


**TO.........DEED OF TRUST**


**JOE F. FOWLKES, TRUSTEE**


     FOR THE CONSIDERATION HEREINAFTER SET OUT, Parr Industries, Inc. has this day bargained and sold and does hereby sell, transfer and convey unto JOE F. FOWLKES, Trustee, his successors and assigns in trust, the following described real estate:

     A tract of land in the 11th Civil District of Giles County, Tennessee, a portion of tract is in the City of Pulaski, Tennessee, lying on the South end of Eleventh Street, on the South side of the Tennessee Southern Railroad and being more particularly described as follows:

     Beginning at a point at the intersection of Eleventh Street and the centerline of Tennessee Southern Railroad; thence,

     With the center of said railroad thence S 76 deg. 30' 15" E a distance of 292.91'; thence,
     A distance of 392.36' along the arc of a curve to the right having a radius of 2572.96', a delta angle of 8 deg. 44' 14" and a chord bearing of S 70 deg. 25' 29" E, with a chord length of 391.98'; thence,
     A distance of 286.79' along the arc of a curve to the right having a radius of 1917.35', a delta angle of 8 deg. 34' 12" and a chord bearing of S 60 deg. 16' 28" E, with a chord length of 286.52'; thence,
     With the west boundary line of the property of John Dale Crow, Jr. as recorded in Deed Book 297, page 553, ROGCT, S 19 deg. 58' 09" W, passing a 24 inch double Locust at a distance of 100.17', a total distance of 149.09' to the center of Richland Creek; thence,
     With the center of said creek S 85 deg. 11' 07" W a distance of 95.35'; thence,
     S 66 deg. 48' 42" W a distance of 127.65'; thence,
     S 64 deg. 12' 43" W a distance of 183.36'; thence,
     S 57 deg. 39' 08" W a distance of 267.33'; thence,
     With the east boundary line of the property of Robert John Sirois as recorded in Deed Book 334, page 159, ROGCT, N 22 deg. 20' 49" W, passing an iron rod set at a distance of 70.50', a total distance of 296.90' to an iron rod set; thence,
     With the north boundary line of said property of Robert John Sirois N 76 deg. 38' 18" W, passing an iron rod set at a distance of 1301.33', a total distance of 1311.16' to the center of a ditch; thence,
     With the center of said ditch, the east boundary line of the property of Wakefield Realty, LLC as recorded in Deed Book 312, page 781, ROGCT, N 04 deg. 18' 36" E, passing an iron rod set at a distance of 350.73', a total distance of 452.02' to the center of Tennessee Southern Railroad; thence,

With the center of said railroad S 76 deg. 30' 17" E a distance of 1137.23' to the point of beginning and containing 20.76 acres more or less according to a survey by Cleghorn Land Surveying, LLC dated February 17, 2009, Job No. 2009-019.

And being the same property acquired by the undersigned by deed appearing of record in Deed Book _____, page _____, Register's Office, Giles County, Tennessee.

The above described real estate is subject to a sanitary sewer along the North side of the tract and a water line and easement across the SW side of said property. Said property is also subject to an electric power line along the SW side of the tract to a water pumping station building, the SW corner of the tract. Said real estate is also subject to the CSX Railroad 100 foot Charter right of way across the northern portion of the tract surveyed.

Also conveyed to the Trustee is a perpetual easement and right of way from the property above described southerly through and across the property south of the above described property to Richland Creek for the purpose of obtaining water from said creek, together with the right to install and maintain pipes, pumps and other necessary equipment in, on and through said property lying south of the above described property.

This conveyance is also subject to an easement ten (10) feet in width for farm purposes reserved by W.J. Johnson, Et Ux, in Deed Book 140, page 468, Register's Office, Giles County, Tennessee.

As mentioned in Deed Book 140, page 468, Register's Office, Giles County, Tennessee, approximately 1.20 acres of said property is subject to a right-of-way for railroad purposes.

TO HAVE AND TO HOLD said above described real estate unto the said Joe F. Fowlkes, Trustee, his successors in trust and assigns, in fee simple forever.

I COVENANT with said Trustee that I am lawfully seized and possessed of said property, that I have a good and lawful right to sell, transfer and convey the same, and that the same is unencumbered. I further covenant that I will forever warrant and defend the legal title in and to the above described real estate unto the said Joe F. Fowlkes, Trustee, his successors in trust and assigns, in fee simple forever against the lawful claims of all persons.

THE PURPOSE of this conveyance is as follows:

Parr Industries, Inc. is justly and lawfully indebted unto The Pulaski Rubber Company in the principal sum of $265,000.00 as evidenced by its note of even date herewith. Said note bears interest from date at the rate therein mentioned with the same being payable in one hundred twenty (120) consecutive monthly installments of $2,810.73, commencing on November ____, 2009, with the final installment of principal and interest being due and payable on October ____, 2019. Parr Industries, Inc. is desirous of securing and making certain the payment of said note and this conveyance is made for these purposes and none other.

Maximum principal indebtedness for Tennessee recording tax purposes is $265,000.00.

I further covenant with said Trustee that I will promptly make all payments of principal and/or interest when due, that I will pay all taxes, liens or assessments promptly on this property, that I will keep the building or improvements on this property in good repair, that I will not commit waste on this property, and that I will keep the property insured for the Trustee as his interest may appear.

It is expressly understood that in the event of default in the payment of any installment when due, or the interest when due, or either; or default in performance of any of the covenants of title, or any of the other covenants hereunder; or if I shall sell, convey, mortgage, pledge or alienate the premises, or any part thereof, or any interest therein, or shall be divested of my title or any interest therein in any manner, whether voluntarily or involuntarily, without the prior written consent of the owner and holder of said note; then the owner and holder of said note shall have the right, at his option, to declare the balance of said note remaining unpaid, both principal and interest, at once due and payable.

This deed of trust is also given as security to the owner and holder of said note for all indebtedness that I may now owe or may in the future be incurred by me, and all such other indebtedness shall be deemed a part of the indebtedness secured by this deed of trust, and shall be recoverable as such.

Now if I shall well and truly pay off and discharge said note and interest at maturity, and the various installments thereof as they become due, and the interest when due, and shall keep the taxes paid promptly on said property and shall keep the buildings insured and the policy assigned as hereinafter provided, then this conveyance shall be null and void; but if I fail to pay said note and interest at maturity, or any renewals that may be permitted, at maturity, or fail to pay any of the installments when due, or the interest when due, or either, or fail to pay the taxes on said property when due, or fail to procure insurance on the buildings on the above described premises and have the policy assigned as hereinafter provided, or fail in any of my undertakings, then the trustee herein shall have the right, after advertising said property for twenty days by written, typewritten or printed hand bills posted in two or more public places in the 11th Civil District of Giles County, Tennessee, and at the Courthouse door in Pulaski, Tennessee, or by newspaper advertisement as required by law, to sell said property at public auction to the highest and best bidder for cash, at the north door of the Courthouse in Pulaski, Tennessee, in bar of the right of redemption and free from homestead, and in the event of a sale, the trustee will apply the proceeds as follows:

First: To the payment of the costs and expenses of making and executing this trust, including reasonable attorney's fee and trustee's commission;

Second: To the payment of the amount secured or intended so to be;

Third: The remainder, if any, he will pay to me or my order.

In the event of a sale, the trustee or the owner and holder of said note may bid and become the purchaser of said property the same as any disinterested party, and said trustee is authorized to execute and deliver to the purchaser a good and sufficient deed conveying said property in as full and ample a manner as I myself could do.

If the mortgagee(s), trustee or holder of said note shall become a party to any suit or proceeding at law or in equity in reference to their interest in the premises herein conveyed, the reasonable costs, charges and attorney's fees in such suit or proceeding shall be added to the principal sum then owing by the mortgagor(s) and shall be secured by this instrument.

The Grantor herein agrees and binds himself to procure insurance on the above described premises in an amount not less than $265,000.00 with loss clause payable to The Pulaski Rubber Company or order as its interest may appear, and in the event the Grantor fails to procure such insurance and assign the same, the cost thereof will he secured by this instrument, together with any taxes the trustee or the owner and holder of said note may have to pay, and in case of default in either of the above respects, the trustee is authorized to foreclose this instrument in the manner herein above set forth.

In the event the trustee named is unable to serve or refuses when action hereunder is necessary, then the owner and holder of the indebtedness hereby secured may appoint a substitute trustee with all powers, duties and obligations imposed on the trustee herein named, which said appointment shall be in writing and duly registered.

The address of the Trustee, JOE F. FOWLKES, is P.O. Box 677, Pulaski, Tennessee 38478.

THIS THE_____DAY OF OCTOBER, 2009.


PARR INDUSTRIES, INC.


By:_____
    Donald Parr, President


STATE OF TENNESSEE
COUNTY OF GILES

Before me, the undersigned, of the state and county mentioned, personally appeared Donald Parr, with whom I am personally acquainted, and who, upon oath, acknowledged such person to be President of Parr Industries, inc. the within named bargainor, and that such Donald Parr executed the foregoing instrument for the purpose therein contained, by personally signing the name of Donald Parr as President.

Witness my hand and seal at office in Pulaski, Tennessee this the _____ day of October, 2009.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

# DEED OF TRUST NOTE

$265,000.00

DECEMBER 30, 2009

PULASKI, TENNESSEE

FOR VALUE RECEIVED, the undersigned promises to pay to The Pulaski Rubber Company, a Tennessee Corporation, or order, the principal sum of TWO HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS ($265,000.00) with interest from date at the rate of FIVE PERCENT (5%) per annum on the unpaid balance until paid. The said principal and interest shall be payable at 1833 East Market Street, Akron, Ohio 44305, or at such other place as the holder may designate in writing in ONE HUNDRED TWENTY (120) consecutive monthly installments of TWO THOUSAND EIGHT HUNDRED TEN AND 73/100 DOLLARS ($2,810.73) commencing on the 30th day of January, 2010, and continuing on the same day of each month thereafter with the 120th and final installment of principal and interest being due and payable on the 30th day of December, 2019. Said payments shall be applied first to interest with the balance to principal.

If default be made in the payment of any installment under this note, and if the default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this note and expressly agree that this note, or any payment thereunder, may be extended from time to time without in any way affecting the liability of the maker and endorsers hereof.

It is expressly agreed and understood that the maker shall have the right of prepayment or anticipation without interest or other penalty.

This note is secured by a Deed of Trust of even date herewith duly recorded in the Register's Office, County of Giles, State of Tennessee, conveying real estate located in said county.

PARR INDUSTRIES, INC.

By: _Donald Parr_____

Donald Parr, President



| FIRM BRIEF (HOME) | COMPANY PROFILE | ERISA FIDUCIARY PRACTICE | PENSION LAW PRACTICE | HELPFUL LINKS |

🖨 PRINTABLE PAGE      **COMPANY PROFILE**

EXHIBIT

tabbies®

7

*NICHOLAS L. SAAKVITNE is a pension attorney and professional ERISA fiduciary in Santa Monica, California. Nick's Law Degree is from New York University School of Law (J.D., 1976); he also has a Masters in Taxation from New York University School of Law (L.L.M., 1977), and he has more than 35 years experience in the employee benefits field. He has held Martindale-Hubbell's highest attorney rating (AV) since 1985\*. Nick is a Fellow in the American College of Employee Benefits Counsel. For the past 8 years he has been named to the Southern California Super Lawyers list. For many years Nick assisted companies establish and operate tax-qualified retirement plans in conformity with all the requirements of pension law. He worked continuously with corporate plan sponsors and with administration firms and other pension professionals on plan design and operation issues; he handled many audits as well as voluntary settlement agreements to resolve plan qualification problems and compliance issues with the Internal Revenue Service and the U.S. Department of Labor.*

*As a transition from his pension practice, Nick began serving as an ERISA fiduciary more than 15 years ago, and substantially all of his practice currently is as a plan fiduciary. He is frequently appointed Plan Trustee and Plan Administrator both in problem situations and for ongoing plans (especially ESOPs), to marshal plan assets and to effectuate plan terminations or other plan transactions. Nick's particular expertises include ESOPs and orphan retirement plans. [Plan assets requiring special handling sometimes include employer stock, trust deeds and promissory notes, limited partnership interests, real estate, receivables from plan sponsors, and claims against former fiduciaries]. Participant communications comprise a substantial portion of the firm's fiduciary work, and Nick and all firm staff prioritize participant calls (and e-mails) very highly.*

\* *Martindale-Hubbell is the facilitator of a peer review process that rates lawyers. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. MARTINDALE-HUBBELL ratings fall into two categories - legal ability and general ethical standards. Legal Ability Ratings are: A Very High to Preeminent, B High to Very High and C Good to High. There is one general ethical standard rating "V" or "very high" - and an attorney must receive it in order to be rated.*

**STEVEN E. ROSEBAUGH**, as the Business Manager and Administrator of the law firm, manages and coordinates the law firm's daily operational components. He time manages the financial, accounting, client services, and general administrative functions to consistently maintain the law firm's high quality standards. Mr. Rosebaugh has a Bachelor's Degree in Business Administration and a Master's Degree in Finance. He has been a business professional utilizing his managerial/executive skills for over 40 years.

**MICHELINE "MIMI" HIMES** is the law firm's Orphan Plan Coordinator. An "orphan plan" is a plan that has lost its sponsoring employer and/or its remaining Trustees. Once Mr. Saakvitne is appointed as Trustee and Plan Administrator for the Plan, the work of gathering information in order to pay plan participants begins. As Orphan Plan Coordinator, Mimi is responsible for working with the Plan's record-keepers, custodians of the assets, third party administrators and the Department of Labor in order to transfer the plan assets to the individual participants. Mimi also assists Mr. Saakvitne in the administration and implementation of court settlements. She has a degree in Accounting and over 25 years combined experience in retirement plan administration and accounting.

*SHARON L. HERITAGE* is the law firm's Benefits Coordinator. Her previous experience and two master's degrees enable her to effectively communicate with participants in order to assist them with benefit eligibility questions and in completing their benefit distribution forms. Sharon considers her personal interactions with participants to be the most important part of her job. She is also responsible for determining benefit eligibility, reviewing distribution forms, maintaining distribution records for each plan and coordinating various tax filings such as the annual 1099R Forms.

*The firm has many professional contacts in the legal, pension administration and ESOP record keeping, actuarial, ESOP evaluation, investment and accounting professions, which it draws on as necessary to meet client needs.*

532 Colorado Avenue, Second Floor                    Santa Monica CA 90401-2408

PHONE: (310) 451-3225                    FAX: (310) 451-9089

COMPANY          COMPANY          ERISA FIDUCIARY          PENSION LAW          HELPFUL
BRIEF            PROFILE          PRACTICE                PRACTICE             LINKS

© 2012 Nicholas L. Saakvitne, A Law Corporation
Site Designed By: www.avenue18computer.com

# SETTLEMENT ADMINISTRATOR FIDUCIARY AGREEMENT

## BETWEEN

## THE PLAINTIFFS REPRESENTING THE CLASS SETTLING WITH R.C.A. RUBBER COMPANY, THE PULASKI RUBBER COMPANY AND THE PULASKI RUBBER COMPANY BENEFIT PLAN

## AND

## NICHOLAS L. SAAKVITNE

THIS AGREEMENT is entered into, subject to approval of the Court, by and between the Plaintiffs representing the Class settling with R.C.A. Rubber Company, The Pulaski Rubber Company and the Pulaski Rubber Company Benefit Plan (collectively "Defendants"), Defendants and NICHOLAS L. SAAKVITNE ("NLS").

WHEREAS, Defendants have agreed, subject to Court Approval, to establish a Settlement Fund in order to resolve claims in an action pending as *Edward L. Cheatham, et al. v. The R.C.A. Rubber Company of America [sic], et al.*, No. 1:11-cv-0006 (M.D. Tenn.); and

WHEREAS, it is deemed desirable and in the best interests of Settlement Class Members to appoint NLS, an attorney and professional ERISA fiduciary, as Settlement Administrator and Independent Fiduciary with full authority to control and manage the operation and administration of the Settlement Fund; and

WHEREAS, NLS hereby agrees to serve in such capacities for the Settlement Fund and its Settlement Class Members;

- 1 -

NOW, THEREFORE the Plaintiffs, Defendants and NLS, pursuant to Court approval, hereby agree with each other as follows:

## ARTICLE I
## STATUS AND DUTIES OF NLS

*1. Status.* Upon the execution of this document by both parties hereto, NLS shall act as the Settlement Administrator and Independent Fiduciary of the Settlement Fund. NLS shall assume all of the powers, authority, and obligations of a Settlement Administrator and Independent Fiduciary including, but not limited to coordinating communications with Settlement Class Members, arranging distribution of benefits to Settlement Class Members, and to delegate fiduciary authority and ministerial duties as deemed in the best interests of Settlement Class Members.

*2. Acknowledgment.* NLS acknowledges that he will act as Settlement Administrator and Independent Fiduciary for the Settlement Fund and accepts responsibility as a Settlement Administrator and Independent Fiduciary. NLS shall discharge his duties solely in the interests of Settlement Class Members and in accordance with applicable law.

*3. Resignation/ Removal of NLS.* NLS agrees that he will not terminate this Agreement, resign or otherwise terminate his services as Settlement Administrator or Independent Fiduciary for the Settlement Fund until such time as a successor Settlement Administrator and Independent Fiduciary has accepted the appointment. The Plaintiffs may remove NLS from either or both of such capacities at any time, upon thirty (30) days written notice to NLS.

## ARTICLE II
## COMPENSATION AND EXPENSES

*1. Compensation and Expenses.* NLS will be paid a fee for his services as follows: $6,000 shall be paid as an advance retainer from Settlement Proceeds for the first two years of his services; and should the Class require his services beyond such two year period, then he will be paid an additional $2,000 per year for his services for the ensuing three years with total fees not to exceed $12,000. None of the Plaintiffs nor any of the Defendants shall have any liability therefor inasmuch as all fees shall be paid from the Settlement Fund.

-2-

2. *Expenses.* All reasonable expenses incurred by NLS in performance of his duties hereunder for third party services (*e.g.*, check distribution costs including preparation and filing of required tax reporting forms, which services are intended to be provided by Penchecks), recordkeeping fees, investment management fees, Bank Trustee fees, any search firm fees to locate missing participants and while not expected, legal fees) shall be paid from the Settlement Fund.

## ARTICLE III
## MISCELLANEOUS

*1. Entire Agreement.* This Agreement, the provisions of the Settlement Agreement and associated Court orders approving the Settlement Agreement, shall constitute the entire agreement between the Parties.

*2. Amendment.* This Agreement may not be amended or modified in any manner except by a written agreement executed by both Parties.

*3. Successors.* This Agreement shall be to the benefit of, and shall be binding upon NLS and his successors, the Plaintiffs, and their successors.

*4. Waiver.* No waiver by any party of any breach or series of breaches, of any of the terms, covenants or conditions of this Agreement shall constitute a waiver of any subsequent breach or waiver of said terms, covenants or conditions. Resort to any remedies referred to herein shall not be construed as a waiver of any other rights or remedies to which any party is entitled, except as provided herein.

*5. Applicable Law.* This Agreement shall be governed by applicable federal law and, where not preempted, by the law of Tennessee.

*6. Severability.* Should any provision of this Agreement be declared invalid for any reason, such declaration shall not affect the validity of any remaining portion of the Agreement, which remaining portion shall remain in full force and effect as if this Agreement had been executed with the invalid portion thereof eliminated.

-3-

7.  _Counterparts._ This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.  _Termination._ Unless sooner terminated, this Agreement shall terminate upon the complete liquidation of the Settlement Fund and the completion of all administrative responsibilities with respect to the Settlement Fund.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their respective duly authorized representatives.

**Plaintiffs:**

_____
Edward L. Cheatham

_____
James Gist

_____
James Teeples

Pulaski Rubber Company

By:_____

Its: _____

R.C.A. Rubber Company

By:_____

Its: _____

Pulaski Rubber Company Benefit Plan

By:_____

Its: _____



NICHOLAS L. SAAKVITNE

By:_____

Date:_____



# PENCHECKS FEE SCHEDULE



## BENEFIT DISTRIBUTION SERVICES

**Full Service Processing** ...................... $45 per Participant
(Formerly Check Plus)
Includes all services under Benefit Election Processing and
Payment Only Processing

**Payment Only Processing** .................. $35 per Participant
(Formerly Check Only)

- Lump Sum or Rollover Disbursements
- Payment via Check, ACH, Wire or Debit Card
- Fed & State Tax Withholding & Remittance
- Fed & State Tax Reporting (945, 1099R, 1096)
- Reissue of Participant Distribution $25 each reissue

**Benefit Election Processing** ............. $10 per Participant

- Participant Notice of Pending Distribution
- Required IRS 402(f) Special Tax Notice
- Online Collection of Participant Benefit Election
- Participant Benefit Election Returned to TPA/Plan Sponsor
  in Digital Format and Archived on PenChecks Servers

**Recurring Benefit Payments** - Complete processing
of periodic lump sum payments, annuities and recurring
distribution payments

One-Time Payee Set Up ................ $5 per Payee

Monthly ......................................... $6 per Payment

Quarterly ...................................... $12 per Payment

*Other payment frequencies available

- Fed & State Tax Withholding & Remittance
- Fed & State Tax Returns (945, 1099R, 1096)
- Weekly Death Audit
- Provide Electronic or Paper Advice (Payment
  Confirmation) per payment
- Check, ACH or Debit Card (No Additional Charges)

Payment Changes .......................... $5 per change



## DEFAULT / MISSING PARTICIPANT IRAs
### IRA Set Up Fee - 20% of Participant Account ($100 max)

**Premier IRA Service** – PenChecks performs required due
diligence, processes distributions to responsive participants OR
establishes a Safe Harbor IRA for non-responsive Participants.
In addition to the features of the Express IRA Service, the
Premier IRA Service includes:

- No additional Cost - All fees same as Express IRA*
- Participant Address Search and Update if Necessary
- Participant Notice Compliant with DOL FAB 2004-02
- Online Benefit Election for responsive Participants
- Lump Sum or Rollover Disbursement
- Fed & State Tax Withholding & Remittance
- Fed & State Tax Reporting (945, 1099R, 1096 & 5498)
- $500 minimum participant account balance

*IRAs may assess an additional $50 fee directly to the Plan Sponsor for
each instance the IRS Letter Forwarding Service is requested in excess of
49 times per Calendar Year.

**Express IRA Service** — Immediately establish a Safe Harbor
IRA based on TPA / Plan Sponsor Instructions. The Express
IRA Service includes:

- DOL Safe Harbor Default/Missing Participant IRA
- No minimum account balance
- Fed & State Tax Reporting (945, 1099R, 1096 & 5498)
- Registration with National Registry of Unclaimed
  Retirement Benefits (NRURB)
- Annual Administration Fee - $45 Flat Annual Fee
  charged once per year on Dec 1st
- Distribution Fee - 20% of Participant Account ($60 max)
  for Patriot Act, Distribution Forms and Tax Reporting
- Fastest IRA Set Up Available (Ideal for Year End
  Processing)



EXHIBIT

8



For more information
www.PenChecks.com
800.541.3938

**NOTE** _____

- All PenChecks fees can be charged directly to a Participant's account balance
- Additional TPA fees can be charged directly to a Participant's account balance and be remunerated to the TPA by PenChecks



## TRUST RESOLUTION SERVICES

**Un-Cashed Check Service** - Set Up Fee - 20% of Un-Cashed Check Amount ($100 max)

- No minimum account balance
- Establish taxable savings account and issue necessary 1099-Int
- Payee address search and notice of un-cashed benefit
- Adjudicate and verify Payee identity
- Disbursement of Funds to Unpaid Payee
- Escheat funds and register with the National Registry of Unclaimed Retirement Benefits for non-responsive Payees
- Annual Administration Fee - $45 Flat Annual Fee charged once per year on Dec 1st
- Distribution Fee - 20% of Participant Account ($60 max) for Patriot Act, Distribution Forms and Tax Reporting

**Abandoned Plan Program** - fees charged on a case by case basis. Services may include:

- PenChecks serves as Successor Custodian or Partners with Current Custodian to Terminate Plan
- PenChecks requests Qualified Termination Administrator (QTA) status for the Plan from the DOL
- Terminate Plan according to DOL/QTA requirements
- Locate, Notify and Distribute assets to plan participants
- Establish Missing Participant IRAs for non-responsive participants and register them with the National Registry of Unclaimed Retirement Benefits
- Locate and Partner with former Plan Administrator



## LEGAL / SETTLEMENT SERVICES

**Court Order Settlements** - fee charged on a case by case basis

- Payment via Check, ACH, Wire or Debit Card as instructed by the Court Order
- Fed & State Tax Reporting (1099 Misc)
- Reporting to Court as needed

**Bill Paying**............................................ $25 per Payment

- Issue payment to vendor
- Issue 1099s to vendors as needed

**Class Action Settlements** - fee charged on a case by case basis

- Mailing of Class Action Group Notice
- Claim form processing
- Establish a Qualified Settlement Fund, (Obtain EIN for Fund) and submitting 1120SF to the IRS
- Issue payments to class members as instructed via Check, ACH, Wire and Debit Card
- Issue 1099s to class members and IRS
- Reporting to Court as needed

## ADDITIONAL PENCHECKS SERVICES

**Outgoing Wire Transfer**..................... $30 per Item

**Outgoing ACH** .................................. $20 per Item

**Debit Card** ......................................... $15 per Card

**Overnight Mailing** ........................... $40 per Mailing

**NSF Check** ........................................ $25 per NSF

**Certified Mailing** .............................. $30 per Mailing
(Volume Discounts May Apply)

**Participant/Address Search** ............... $15 per Search
(Volume Discounts May Apply)

**Participant Search + Certified Mailing** . $30 per Person
(Volume Discounts May Apply)

**Credit Bureau / PI Search** ................. $300 per Search

**1099R Only / Tax Remittance** .......... $35 per 1099R

**Copy of 1099R/ Forms/Check**.......... No Charge

$50 per hour charge will apply to copy & information requests requiring more than 1 hour of staff time

$30 per additional payment related to split distributions

---

**NOTE**

- All PenChecks fees can be charged directly to a Participant's account balance
- Additional TPA fees can be charged directly to a Participant's account balance and be remunerated to the TPA by PenChecks

**ADDITIONAL INFORMATION**

**Availability of Funds** - Funds designated for benefit payments must be made payable to PenChecks, Inc. Employee Benefit Distribution Trust. Funds designated for UnCashed Check Service must be Payable to PenChecks Missing Distributees Distribution Trust. Deposits made by ACH, Wire, and Check/Draft require 24 hours, 72 hours, and five business days respectively to clear before any benefit distribution is processed.

**Float** - Due to factors which are beyond the control of PenChecks, such as the time required for Participants to make benefit elections and/or negotiate their distribution checks, some earnings (float) will occur on the funds to be distributed. The float is used to defray operating and overhead expenses. Funds pending distribution are temporarily invested in FDIC insured money market or savings instruments. Since the time factors are different for each Plan and the rate of return on money market investments varies, it is not possible to calculate the precise amount of float that will be generated by any given deposit held for distribution. Based upon averages derived from the processing of thousands of distributions, use of the following formula will produce an average amount of float for each $1,000 deposited for distribution processing: Average Daily Interest Rate of 0.0000275 x $1,000 x 5 days of float on average = $0.14 per $1,000 deposit.

© PENCHECKS, INC 2010

For more information
www.PenChecks.com
800.541.3938

# PenChecks

## Mission

PenChecks is committed to making retirement plan distribution processing easy and profitable for our clients.

## History

In 1993 a group of 30 dedicated retirement plan professionals came together to discuss their business and the retirement industry as a whole. Through their discussions, this group determined that there would be great value in having a partner entity that could focus solely on processing distributions from their client's retirement plans.

The methodology, consistency and profitability with which each firm handled distributions varied greatly. Thus, having one uniform way for processing all distributions while simultaneously reducing the amount of work involved by more than 70%, increasing quality control, improving customer service and reducing risk, became a very valuable proposition. The idea was so well received and the initial trials were so successful it was quickly determined that there was a national market for such a firm. As a result, PenChecks was born and its doors were opened for business to the general public in November of 1994.

Over half a million distributions later, PenChecks has become the recognized industry leader and innovator in retirement plan distribution processing. Additionally, the PenChecks family of wholly-owned subsidiary companies have grown to include a state-regulated trust company, an open-use public service company and a limited liability company. PenChecks continues to pioneer the retirement plan distribution industry and remains steadfast to its corporate mission of making distribution processing easy and profitable for its clients.

For more information
www.PenChecks.com
800.541.3938





## PenChecks Family of Companies

### PenChecks Trust Company of America

A South Dakota Corporation / www.PenChecksTrust.com
The corporate, state-regulated trustee of all funds distributed from the PenChecks Employee Benefit Distribution Trust and custodian of all Default / Missing Participant IRA funds administered by PenChecks.

### The National Registry of Unclaimed Retirement Benefits (NRURB)

A California Public Service Corporation / www.UnclaimedRetirementBenefits.com
An open-use, public service company dedicated to helping:
- Plan Sponsors list and locate former/missing retirement plan participants with unpaid remainder benefits due to them
- Former plan participants locate and claim lost or abandoned retirement benefits that are due to them

### PenChecks Missing Distributees, LLC

A Delaware Company / www.MissingDistributees.com
An organization designed specifically to help Plan Sponsors, TPAs and Institutions effectively legally alleviate the growing fiduciary liability of stale-dated retirement plan distributions that have gone uncashed by participants.

## Innovation

Since inception, PenChecks sole aim has been to process distributions faster, less expensive and more efficiently for its clients than they can do it for themselves. In pursuit of this endeavor, PenChecks has always dedicated a great deal of effort and resources towards creating processes, services and state of the art systems to accomplish this goal. PenChecks continuously drives market place innovation and creative solutions. Since opening in 1994, PenChecks has been a perpetual leader in bringing innovative solutions to the marketplace.

## Online Processing

### P3 – PenChecks Pay Portal (Formerly BenePay)

Streamlines the benefit distribution process. A web interface dedicated to Plan Providers, Administrators and Sponsors providing the ability to create and monitor distributions, view deposited plan assets, generate reports, withhold and process taxes and issue required tax filings (1099-R, 945, etc) in a safe and secure environment

#### FEATURES & BENEFITS

- Available 24/7
- Highest safety and security
- Hierarchical system structure for confidentiality and integrity
- Bulk upload capabilities
- Robust reporting and monitoring functionality
- Step by Step Distribution Wizard
- Automated federal and state tax engine determines withholdings for participants

## PenChecks Participant Module

The PenChecks Participant Module is a secure, dedicated website for the purposes of providing required notifications and information to Plan Participants and in return, collecting Participant benefit election information.

#### FEATURES & BENEFITS

- 24/7 Participant Access
- Highest safety and security – unique participant PIN logins
- Always-current, digital and printable 402(f) tax notice
- Automated federal and state tax engine determines withholdings for participants
- Variety of delivery methods (i.e. ACH, wire, express mailing)
- Electronic record of participant benefit elections - eliminates illegible handwriting, all user input errors and lost forms
- Green initiative - eliminate participant packages, mailings and postage

### 1994
**November** — PenChecks Established; Centralized Lump Sum, Rollover & Recurring Benefit Payment Processing from Any Custodial Source

### 1995
**April** — Created the first outsourced method to collect participant benefit elections for TPAs & Plan Sponsors

### 1998
**February** — Created the first Missing Participant IRA program in the country which became the basis for the Default IRA Regulations of EGTRRA three years before the law was enacted

### 2000
**December** — Created the first Missing Distributee ™ service in the country for the purpose of legally resolving stale-dated, un-cashed and/or outstanding participant distribution payments

### 2005
**January** — Created the National Registry of Unclaimed Retirement Benefits, a public service company dedicated to helping reunite missing/former employees with earned benefits

### 2006
**June** — Developed and released the first independent online benefit distribution processing software, Benepay (Now P3 - PenChecks Pay Portal)

### 2007
**August** — Developed integrated automatic Broker/Advisor Lead Generation solution with distribution processing (requires no additional software, infrastructure or maintenance)

### 2008
**December** — Created the first independent Online Participant Benefit Election collection and processing website

### 2009
**September** — Designed the first ongoing Default / Missing Participant IRA Reward Program

**October** — Developed the nation's first Premier IRA Fiduciary Service designed to satisfy all requirements of DOL FAB 2004-02(participant location & notification requirements) on behalf of the Plan Sponsor

### 2010
**February** — Founded the PenChecks Trust Company of America

**July** — Introduced PenChecks Automated Solution for Abandoned Plans (ASAP)

**December** — Release of P3 - PenChecks Pay Portal - The next standard in Benefit Distribution Processing


PenChecks INC.

# PenChecks policies

## May 14, 2014

| Insurance Carrier | Type of Coverage | Policy Period | Premium | Limits |
|---|---|---|---|---|
| Hartford | Commercial Package | 6/1/13 – 6/1/14<br>Property<br><br>Liability<br>Aggregate<br>Per occurrence<br>Hired/Non Owned Auto | | $132,700 Business Personal Property<br>$500 deductible<br><br>$4,000,000<br>$2,000,000<br>$2,000,000 |
| Hartford | Workers Compensation | 06/01/13 – 06/01/14<br>BI by accident<br>BI by disease<br>BI by disease | | $1,000,000 each each accident<br>$1,000,000 policy limit<br>$1,000,000 each employee |
| Chubb/Federal | Cyber Liability | 12/14/13 – 06/01/15<br>Each Claim Limit<br>Retention<br>Pending or prior date | | $2,000,000<br>$25,000<br>12/14/2009 |
| Chubb/Federal | Fidelity Bond/Crime | 6-1-13 – 6-1-14<br>Employee Theft<br>Premises Coverage<br>In Transit Coverage<br>Forgery Coverage<br>Computer Fraud<br>Funds Transfer | | $5,000,000<br>$5,000,000<br>$5,000,000<br>$1,000,000<br>$5,000,000<br>$5,000,000 |

# PenChecks policies

## May 14, 2014

| Insurance Carrier | Type of Coverage | Policy Period | Premium | Limits |
|---|---|---|---|---|
| Travelers | Financial Inst. Bond | 6/1/13 - 6/1/14<br>Securities<br>Counterfeit money<br>Claim expense | | $1,000,000<br>$1,000,000<br>$25,000 |
| Chubb/Federal | Errors & Omissions | 7/27/13 – 7/2714<br>Each Claim<br>Aggregate<br>Retro date: | | $5,000,000<br>$5,000,000<br>1/14/1997 |
| Chubb/Federal | Directors and Officers | 3/19/13 – 3/19/14<br>Directors & Officers<br>Maximum Aggregate<br>Retention<br>Pending & prior date:<br><br>Employment Practices<br>Maximum Aggregate<br>Retention<br>Pending & prior date:<br><br>Fiduciary Liability<br>Maximum Aggregate<br>Pending & Prior date: | | $5,000,000<br>$10,000<br>3/19/2010<br><br><br>$5,000,000<br>$25,000<br>3/19/2010<br><br><br>$1,000,000<br>3/19/2010 |
| TOTAL | | | | |



# INTERNAL CONTROLS,
# COMPLIANCE AND RISK MANAGEMENT

## Regulation, Risk Management Programs and Compliance

➢ State-chartered & regulated trust company:
- PenChecks Trust Company of America (PTCA) is a state-chartered, non-depository financial institution regulated and routinely examined by the South Dakota Division of Banking using the FDIC's Uniform Interagency Trust Rating System and MOECA examination protocol (Management, Operations, Earnings, Compliance and Asset Management). PenChecks Trust has never earned less than a "favorable" rating.

➢ Segregation of Duties - Shared responsibilities of key processes disperse the critical functions of those processes to more than one person <u>and</u> department.

➢ Board level Investment Committee Oversight.

➢ Risk Management programs include but are not limited to:
- Written Information Security Program
- Business Continuity/Disaster Recovery Program
- BSA/AML Program – 4 pillars
- Vendor Management Program

➢ Dedicated Compliance/Risk Management function:
- Led by Chief Compliance Officer & JD with 23 years of experience;
- CCO is a member of the Senior Management Team and has direct access to the Board of Directors.

## Systems and IT Controls

➢ Proprietary, on-line automated distribution and benefit elections processing.

➢ All systems (web, email, and database) have multiple backups via SSAE-16 Type II certified Cloud provider (INetU).

➢ System controls provide reasonable assurance that:
- New accounts are properly authorized;
- Deposits (check, wire, ACH) are accurately recorded on a timely basis;
- Distributions are paid timely;
- Reconciliations are accurate and timely; and
- Taxes are withheld and timely paid and reported.

➢ Critical applications and data are backed up daily, archived off-site, and housed in a fault-tolerant service architecture that ensures minimal disruption to processing.

PenChecks Trust Company of America © 2014

- ➢ Dedicated virtual host servers and managed co-location services provided by INetU with SSAE 16 SOC 1 Type II certification, updated annually.
- ➢ Extensive use of automation and processing, balanced with oversight by our people throughout the process.
- ➢ ID/IP systems in place, fully functioning and routinely monitored and tested.

## About Us

PenChecks Trust Company of America **(PenChecks Trust)** is a state-chartered, non-depository trust company and a wholly-owned subsidiary of PenChecks, Inc, an expert in qualified and non-qualified retirement plan distributions. Founded in 1994, PenChecks is a leading outsource partner and specializes in providing services related to the processing of benefit payments; the administration and management of Default/Missing Participant IRAs for Plan Sponsors, TPAs and Financial Institutions; Uncashed Checks/Taxable Savings Accounts, Abandoned Plans and other trust related services. **In 2013 PenChecks processed over $500 million in benefit distribution payments.**